GTSI CORP., individually and derivatively on behalf of Eyak Technology, LLC, Plaintiff,

v.

EYAK TECHNOLOGY, LLC, the Eyak Corporation, Global Technology, LLC, Keith Gordaoff, Sylvia Lange, Jim Ujioka, Rod Worl, and Quang Le, Defendants,

and

Eyak Technology, LLC, Nominal Defendant.

C.A. No. 5815–VCL.

Court of Chancery of Delaware.

Submitted: Nov. 4, 2010.
Decided: Nov. 15, 2010.

Thomas E. Hanson, Brett M. McCartney, Morris James LLP, Wilmington, De-

laware; James H. Hulme, Donald B. Mitchell, Jr., Eric S. Baxter, Arent Fox LLP, Washington, D.C.; Attorneys for Plaintiff.

Gregory V. Varallo, Scott W. Perkins, Patrick W. Flavin, Richards, Layton & Finger, P.A., Wilmington, Delaware; Erik J. Olson, Morrison & Foerster LLP, Palo Alto, California; Attorneys for Defendants.

## OPINION

LASTER, Vice Chancellor.

Plaintiff GTSI Corp. is one of three members of defendant Eyak Technology, LLC, a Delaware limited liability company (dubbed "EyakTek" by the parties). GTSI has asserted a variety of claims against (i) EyakTek itself, (ii) fellow LLC members The Eyak Corporation ("Eyak Corp.") and Global Technology, LLC ("Global"), and (iii) five individuals who are managers or officers of EyakTek.

EyakTek and the individual defendants have moved to stay this action until an arbitrator can determine whether GTSI's claims are subject to arbitration under EyakTek's limited liability company operating agreement (the "LLC Agreement"). Because the LLC Agreement provides clear and unmistakable evidence of the parties' intent to arbitrate substantive arbitrability, I grant the motion to stay this action pending the arbitrator's decision.

## I. FACTUAL BACKGROUND

The facts are drawn from the complaint and the documents it incorporates by reference, including the LLC Agreement. As plaintiff, GTSI receives the benefit of all reasonable inferences.

### A. EyakTek And The Section 8(a) Business Development Program

EyakTek markets and sells computers and related products to federal, state, and local governments in the United States. EyakTek's majority member, Eyak Corp., is an Alaskan Native Corporation formed pursuant to the Alaska Native Claims Settlement Act. Because of Eyak Corp.'s status, EyakTek was eligible for and participated in the Section 8(a) Business Development Program, a federal program administered by the Small Business Administration (the "SBA") that provides assistance to companies owned by members of historically disadvantaged populations.

GTSI is a Delaware corporation headquartered in Virginia whose shares trade publicly on the NASDAQ Global Market. In 2002, GTSI executed the LLC Agreement and acquired a 37% membership interest in EyakTek. GTSI is also a government contractor and acted as EyakTek's "mentor" in the SBA's Section 8(a) program.

### B. EyakTek's "Early Graduation"

By letter dated November 20, 2009, EyakTek asked the SBA for "early graduation" from the Section 8(a) program. EyakTek and the SBA later executed a Voluntary Early Graduation Agreement pursuant to which EyakTek withdrew from the Section 8(a) program effective May 10, 2010. This event had potentially significant implications under the LLC Agreement, which provides:

> The Company shall dissolve and shall commence winding up and liquidating upon ... [t]he graduation or final withdrawal of the Company from the Section 8(a) BD Program, as determined in a final determination by the SBA, unless the Members by a vote of at least 65% decide to continue the Company's business operations.

LLC Agreement § 11.1. With its 37% member interest, GTSI can veto any effort to continue EyakTek's business.

By letter dated August 4, 2010, GTSI asserted that EyakTek must dissolve as a

result of its graduation from the Section 8(a) program and called for a meeting of the EyakTek members to consider whether there was any basis for EyakTek to continue operating. EyakTek responded by proposing to acquire GTSI for $7 per GTSI share. GTSI rejected the acquisition proposal and formally called for a meeting of members pursuant to Section 6.3 of the LLC Agreement. EyakTek declined to hold a meeting.

### C. This Litigation

On September 14, 2010, GTSI filed this lawsuit. The original complaint contained six counts. Count I sought declaratory relief and specific performance to remedy EyakTek's refusal to hold a meeting of members. Count II sought declaratory relief pertaining to the vote required for various actions, including continuing EyakTek's business after leaving the Section 8(a) program, borrowing funds in excess of $250,000, and engaging in a merger or consolidation. Count III asserted that certain of EyakTek's directors and officers breached their fiduciary duties by causing EyakTek to contravene the LLC Agreement. Count IV repackaged the previous claims as breaches of the implied covenant of good faith and fair dealing. Count V asserted that EyakTek violated the LLC Agreement by withdrawing early from the Section 8(a) program. Count VI sought a declaration that the individual defendants are not entitled to indemnification under the LLC Agreement.

The LLC Agreement contains a broad arbitration provision. Section 13.10 states:

> The Members agree that any dispute between them or between any of them and the Company arising out of, or in connection with, the execution, interpretation, performance or non-performance of this Agreement (including the validity, scope and enforceability of these arbitration provisions) shall be settled by arbitration conducted in the English language, in accordance with the commercial arbitration rules of the American Arbitration Association ("AAA") by a single arbitrator, designated by the AAA in accordance with AAA rules. . . . The decision of the AAA shall be final, binding on the Members and the Company, and not subject to further review, and judgment on the awards of the AAA may be entered in and enforced by any court having jurisdiction over the parties or their assets subject to the procedural requirements in such jurisdiction. . . . The AAA and the arbitrator shall be authorized to award equitable relief, including specific performance or other injunctive relief. . . . The arbitration hearing shall be held in Anchorage, Alaska. Notwithstanding the foregoing agreement to arbitrate, the parties expressly reserve the right to seek provisional relief from any court of competent jurisdiction to preserve their respective rights pending arbitration.

LLC Agreement § 13.10 (the "Arbitration Provision").

Notwithstanding the expansive scope of the Arbitration Provision, a separate provision of the LLC Agreement has led GTSI to argue that it can sue in this Court. Section 13.13 states:

> Each Member agrees with the other Members that the other Members would be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the non-breaching Members may be entitled, at law or in equity, the non-breaching Members shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and

provisions hereof in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof.

LLC Agreement § 13.13 (the "Equitable Remedy Provision"). In light of this provision, GTSI contends that it has the option to bypass arbitration so long as it frames its claims artfully as seeking specific performance or injunctive relief.

### D. Post–Filing Events

Less than a week after GTSI filed this action, the defendants countered by demanding arbitration (the "Arbitration Demand"). The Arbitration Demand generally mirrors GTSI's complaint.

On Friday, October 1, 2010, the SBA suspended GTSI "from Federal Government contracting and from directly or indirectly receiving the benefits of federal assistance programs." The SBA cited evidence of fraud and "a lack of business integrity or business honesty." GTSI disclosed publicly that the initial period of suspension could last at least a year. After the announcement, EyakTek withdrew its proposal to acquire GTSI.

On October 5, 2010, EyakTek scheduled a meeting of its members, which took place on October 18. GTSI contends that at the meeting, EyakTek prevented GTSI from raising the items of business that GTSI sought to present and instead forced the members to vote on (i) a proposal that EyakTek would not dissolve, windup, or liquidate, notwithstanding its graduation from the Section 8(a) program and (ii) whether EyakTek would continue to perform its obligations under its Section 8(a) agreement. GTSI declined to vote in favor of either resolution, which therefore received support from only 63% of Eyak-Tek's membership interests.

On November 3, 2010, GTSI filed its first amended complaint. Counts I–VI generally reprise claims from the original complaint, except that Count I now challenges how the October 18 meeting was conducted. In a new Count VII, GTSI contends that it twice designated a representative to the EyakTek board of managers and that EyakTek refused to recognize the representative in violation of the LLC Agreement.

## II. LEGAL ANALYSIS

■■ When a party invokes an arbitration provision, the Court first must determine who will decide the question of substantive arbitrability. *See DMS Properties–First, Inc. v. P.W. Scott Assocs., Inc.*, 748 A.2d 389, 392 (Del.2000). The law presumes that a court will decide substantive arbitrability. *McLaughlin v. McCann*, 942 A.2d 616, 621–22 (Del.Ch. 2008). If, however, a contract clearly and unmistakably provides that an arbitrator will decide substantive arbitrability, then the contract controls. *Id.; see BAYPO Ltd. P'ship v. Tech. JV, LP*, 940 A.2d 20, 21 (Del.Ch.2007).

The Arbitration Provision states: "The Members agree that any dispute between them or between any of them and the Company arising out of, or in connection with, the execution, interpretation, performance or non-performance of this Agreement (including the validity, scope and enforceability of these arbitration provisions) shall be settled by arbitration. . . ." By stating that the members "shall" arbitrate "any dispute . . . including the validity, scope and enforceability of these arbitration provisions," the Arbitration Provision clearly and unmistakably assigns to the arbitrator the task of determining substantive arbitrability. *See BAYPO*, 940 A.2d at 27 (interpreting clause "specifically directing that an arbitrator decide all substantive and procedural issues"); *Nutzz.com, LLC v. Vertrue Inc.*, 2006 WL 2220971, at *6 (Del.Ch. July 25, 2006) (generally enforcing provision

that empowered arbitrator to decide "any dispute . . . including any issues relating to arbitrability or the scope of this arbitration clause").

The parties have devoted six (!) briefs to debating the meaning of *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76 (Del.2006) [hereinafter *"Willie Gary "*]. That decision governs the quite different situation in which an agreement is *silent* on who determines substantive arbitrability, but refers generally to arbitral rules which themselves provide for an arbitrator to determine substantive arbitrability. *Id.* at 80. Addressing those circumstances, the Delaware Supreme Court held as follows:

> As a matter of policy, we adopt the majority federal view that reference to the AAA rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator. We do so in the belief that Delaware benefits from adopting a widely held interpretation of the applicable rule, as long as that interpretation is not unreasonable. The majority view does not, however, mandate that arbitrators decide arbitrability in *all* cases where an arbitration clause incorporates the AAA rules. Rather, it applies in those cases where the arbitration clause generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability.

*Id.*

Under *Willie Gary,* when an arbitration provision refers to the AAA rules or a "set of arbitration rules that empower arbitrators to decide arbitrability," but is otherwise silent on who determines substantive arbitrability, then this Court must determine whether "the arbitration clause generally provides for arbitration of all disputes." *Id.* If it does, then the parties are deemed to have agreed to arbitrate sub-

stantive arbitrability in accordance with the rules that they broadly incorporated. *Id.; see Lefkowitz v. HWF Hldgs., LLC,* 2009 WL 3806299, at *8–9 (Del.Ch. Nov. 13, 2009) (applying *Willie Gary* to agreement that was silent on who decided substantive arbitrability except for reference to AAA); *McLaughlin,* 942 A.2d at 626–27 (same). If it does not, then "something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator." *Willie Gary,* 906 A.2d at 81.

■ Inspired by *Willie Gary,* GTSI argues that I first must determine whether the LLC Agreement "generally provides for arbitration of all disputes." Citing various provisions that refer to courts, including the Equitable Remedy Provision, GTSI argues that the Arbitration Provision does not "generally provide[ ] for arbitration of all disputes." Noting similarities between the Equitable Remedy Provision and a clause cited in *Willie Gary,* GTSI contends that its claims must be allowed to proceed in this tribunal.

In making this argument, GTSI skips over the threshold question of whether the LLC Agreement clearly and unmistakably contemplates that the parties will arbitrate substantive arbitrability. In *Willie Gary,* the LLC agreement did not contain language addressing that issue, other than a generic reference to the AAA Rules. In the EyakTek LLC Agreement, by contrast, the parties have agreed that they "shall" arbitrate "any dispute . . . including the validity, scope and enforceability of these arbitration provisions." This language is dispositive and requires that I defer to the arbitrator to determine substantive arbitrability.

■ There remains one final exception under which a court will answer the question of substantive arbitrability. For obvious reasons grounded in efficiency, a

court need not defer to an arbitrator if the assertion that the underlying dispute would be arbitrable is "wholly groundless." *McLaughlin*, 942 A.2d at 626; *see Nutzz. com*, 2006 WL 2220971, at *6 (finding that agreement "clearly and unmistakably" addressed arbitrator's general power to decide substantive arbitrability, but claim at issue was subject to a specific carve-out). Satisfying this narrow exception requires "a clear showing that the party desiring arbitration has essentially no non-frivolous argument about substantive arbitrability to make before the arbitrator." *McLaughlin*, 942 A.2d at 626–27. "In a case where there is any rational basis for doubt about [substantive arbitrability], the court should defer to arbitration, leaving the arbitrator to determine what is or is not before her." *Id.* at 625.

EyakTek's Arbitration Provision contains language that could trigger the exception. The Arbitration Provision states that "Notwithstanding the foregoing agreement to arbitrate, the parties expressly reserve the right to seek provisional relief from any court of competent jurisdiction to preserve their respective rights pending arbitration." If GTSI had sought only provisional relief to protect its rights pending arbitration, then it would be frivolous to assert that an arbitrator must determine whether that request was itself arbitrable. GTSI has sought final and binding relief, not provisional relief.

■ The arguments for arbitrability in this case are neither frivolous nor wholly groundless. When excised from the LLC Agreement and read out of context, the Equitable Remedy Provision closely tracks a similar provision in *Willie Gary*, but Delaware law mandates that an agreement be read "as a whole." *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del.1996). Unlike in *Willie Gary*, the Arbitration Provision specifically contemplates that the arbitrator shall decide whether a claim is properly brought in arbitration. Also, the Arbitration Provision empowers the arbitrator to award equitable relief, whereas the arbitration clause in *Willie Gary* carved out equitable relief for the courts. And unlike *Willie Gary*, the Arbitration Provision's sole carve-out is a limited opportunity to seek provisional relief until the arbitrator can address the parties' equitable claims.

A strong argument can be made that, when read as a whole, the LLC Agreement contemplates mandatory arbitration of all disputes, while recognizing that the parties may need to seek provisional relief from a judicial officer. The Equitable Remedy Provision assists a party in seeking equitable relief by establishing that a breach inflicts irreparable harm and that a remedy at law is inadequate, thereby providing a contractual basis for an equitable award.[1] So read, the Equitable Remedy Provision fits coherently with the Arbitra-

---

1. *See, e.g., Hexion Specialty Chems., Inc. v. Huntsman Corp.*, 965 A.2d 715, 762–63 (Del. Ch.2008) (enforcing contractual stipulation to specific performance); *Gildor v. Optical Solutions, Inc.*, 2006 WL 4782348, at *11 (Del.Ch. June 5, 2006) ("[I]n the absence of some countervailing public policy interest, courts should respect the parties' bargain [for a remedy of specific performance.]"); *Kansas City S. v. Grupo TMM, S.A.*, 2003 WL 22659332, at *5 (Del.Ch. Nov. 4, 2003) (holding that contractual provision was sufficient to establish irreparable harm); *True N. Commc'ns Inc. v. Publicis S.A.*, 711 A.2d 34, 44 (Del.Ch.1997) (finding that stipulation of irreparable harm was capable of supporting a preliminary injunction); *Vitalink Pharmacy Servs., Inc. v. Grancare, Inc.*, 1997 WL 458494, at *9 (Del. Ch. Aug. 7, 1997) ("[Irreparable harm] is established by [defendant's] stipulation in the Non–Competition Agreement, that '... Vitalink will suffer substantial and irreparable harm in the event [of a breach of the non-competition provision.]' That alone suffices to establish the element of irreparable harm, and [defendant] cannot be heard to contend otherwise."); *SLC Beverages, Inc. v. Burnup & Sims, Inc.*, 1987 WL 16035, at *2 (Del.Ch.

tion Provision as part of a unitary remedial scheme.

There is also good reason to question whether, as GTSI argues, the Equitable Remedy Provision is designed to give the first filing party the option to decide whether to arbitrate or sue. Read literally, the plain language of the Equitable Remedy Provision does not provide a right of action in any court. It rather addresses the type of relief that may be obtained "in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof." The Equitable Remedy Provision leaves it to other parts of the LLC Agreement to address when an action properly can be instituted. Except for provisional relief, the Arbitration Provision requires that "any dispute between [the Members] or between any of them and the Company arising out of, or in connection with, the execution, interpretation, performance or non-performance of this Agreement (including the validity, scope and enforceability of these arbitration provisions) shall be settled by arbitration." Furthermore, this

language specifically requires that an arbitrator determine whether or not claims must be arbitrated. If a first-filing plaintiff had the option to arbitrate or litigate simply by deciding how to draft its prayer for relief, then the plaintiff would be determining whether or not claims must be arbitrated, not the arbitrator.

In light of these issues, a decision-maker could well conclude that GTSI must arbitrate its claims. Under the Arbitration Provision, it is not my task to address substantive arbitrability. All I need find is that there are non-frivolous arguments in favor of arbitrability. Because there are, I defer to the arbitrator to answer the question, in accordance with the clear and unmistakable evidence of the parties' intent.

## III. CONCLUSION

This case is stayed pending the arbitrator's decision on substantive arbitrability. **IT IS SO ORDERED.**

---

Aug. 20, 1987) ("Defendant next claims that plaintiff will not suffer any irreparable harm if a preliminary injunction is not granted. Unfortunately for defendant, this argument is precluded by the Agreement itself which provides that a breach of the Agreement would cause irreparable harm to the non-breaching party and gives the non-breaching party the right to specifically enforce the Agreement.").