## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| WEST IP COMMUNICATIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N13C-06-052 DCS |
| | ) | |
| XACTLY CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: April 30, 2014
Decided: June 25, 2014

*Upon Consideration of Defendant's Motion to Dismiss –*
Motion **GRANTED**.

# OPINION

Daniel F. Wolcott, Jr., Esquire and Ryan M. Murphy, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Attorneys for Plaintiff.

Richard L. Renck, Esquire, Duane Morris LLP, Wilmington, Delaware, Attorney for Defendant.

**STREETT, J.**

## Introduction

Plaintiff West IP Communications, Inc. ("Plaintiff") filed a Complaint against Defendant Xactly Corporation ("Defendant"), asserting breach of contract and unjust enrichment claims arising from Defendant's termination of their June 28, 2011 Master Service Agreement (the "Agreement")[1]. Plaintiff alleged that Defendant notified Plaintiff in September 2012 that the internet access and network services provided by Plaintiff were not in accordance with agreed-upon specifications. Plaintiff also alleged that Defendant ceased making monthly payments to Plaintiff thereafter.

Defendant has filed a Motion to Dismiss the Complaint pursuant to Superior Court Civil Rule 12(b)(1). Defendant asserts that Plaintiff's claims seek to enforce contractual obligations arising from the Agreement, thereby implicating the Agreement's alternative dispute resolution procedures.

Plaintiff responds that its claims involve a collection matter and, thus, are one of the Agreement's exceptions to alternative dispute resolution.

However, before the Court can determine whether Plaintiff's claims arise under the Agreement and are subject to the Agreement's alternative dispute

---

[1] The Agreement is between InterCall Communications, Inc. d/b/a Smoothstone IP Communications, a Delaware corporation, and Defendant. Plaintiff is the successor to InterCall Communications, Inc. *See* Compl., ¶ 1 & n. 1 (June 6, 2013). The Agreement refers to Defendant as "Customer." *See* Def. Mot., Ex. A, at Introductory Clause (hereinafter "Agreement").

resolution procedures, the Court must first determine whether a court or an arbitrator has the power to decide substantive arbitrability under the Agreement.

For the reasons set forth below, the Court finds that it does not have the power to determine whether Plaintiff's claims are subject to the Agreement's alternative dispute resolution procedures when the Agreement empowers an arbitrator to decide substantive arbitrability. Thus, an arbitrator must interpret the "Collection Actions" exception to the Agreement's alternative dispute resolution procedures and determine whether the exception applies to Plaintiff's claims in the instant case (i.e., substantive arbitrability). Accordingly, the Court grants the Motion to Dismiss without prejudice.

## Facts

For the purpose of deciding the Motion to Dismiss, the facts set forth below are drawn from the Complaint in the light most favorable to the non-moving party (Plaintiff).[2]

On June 28, 2011, Plaintiff and Defendant, Delaware corporations, entered into the Agreement.[3] The Complaint avers that "Plaintiff agreed to provide . . . internet access and related network services in accordance with specific quantities

---

[2] *Jones v. 810 Broom St. Operations*, 2014 WL 1347746, *1 (Del. Super. Apr. 7, 2014) ("On a motion to dismiss under 12(b)(1), the Court must accept every well-pled allegation as true and draw all reasonable inferences in the non-movant's favor").

[3] Compl., ¶¶ 3 – 5 (June 6, 2013).

and rates" to Defendant's San Jose, California and Bangalore, India "office location[s]," including a specified bandwidth for each office.[4]

In addition, the Complaint alleges that the following circumstances occurred:

On September 12, 2012, Defendant sent an e-mail to Plaintiff alleging that Plaintiff failed to "satisfy" the specified bandwidth for both office locations "in accordance with specifications of the [] Agreement."[5]

On September 19, 2012, Plaintiff sent a written response to Defendant and "explained that the required service had in fact been provided continuously" for both office locations.[6]

On October 12, 2012, Defendant sent an e-mail to Plaintiff "providing its notice of termination of the [] Agreement effective immediately."[7]

On October 26, 2012, Plaintiff sent a letter "informing Defendant that the October 12 Termination Notice was improper and without cause" and that, "pursuant to Section 2.5 of the [] Agreement, Defendant [was] subject to pay an

---

[4] Compl. at ¶ 5 – 6.

[5] Compl. at ¶ 10 – 11.

[6] Compl. at ¶ 12.

[7] Compl. at ¶ 14.

4

early termination fee in the amount of $212,666.67" (the "Early Termination Costs").[8]

On October 30, 2012, Defendant's payment of $6,363.78 for internet access and network services provided in September 2012 (the "September 2012 Monthly Service Fee") became due.[9] Plaintiff sent Defendant an invoice.[10] (The date of such invoice and when it was sent are not specified in the Complaint.) However, Defendant did not remit payment.[11]

The Complaint does not specify whether any further correspondence took place or further payments were subsequently made prior to Plaintiff initiating the instant case.

---

[8] Compl. at ¶ 15 – 16.
    *See also* Agreement at § 2.5. Section 2.5 of the Agreement ("Early Termination Cost Payable by Customer Upon Early Termination of Services") provides that:

> [t]he Subscription Fees charged by Smoothstone are based on Customer's agreement to purchase the quantity of Services for the full Service Period set forth in the governing CSA(s) and [Service Addendums ("SA(s)")]. Thus, other than termination by Customer under Sub-Section 1.3 or for cause pursuant to Sub-Section 2.3 above, if this Agreement and/or any CSA(s) or SA(s) are terminated by either party for any other reason prior to the expiration of the applicable Service Period, Customer shall pay Smoothstone Early Termination Costs equaling one hundred percent (100%) of the Subscription Fees set forth in the applicable CSA(s) and/or SA(s) for each month remaining between the effective date of termination and the expiration date of the then-current Initial Service Period or Monthly Renewal Period, whichever is applicable. Customer acknowledges that it would be difficult or impossible to calculate Smoothstone's actual damages incurred as a result of such early termination and that these Early Termination Costs represent a reasonable attempt to establish fair and equitable compensation payable to Smoothstone resulting from any such early termination.

[9] Compl. at ¶ 17.

[10] Compl. at ¶ 25.

[11] Compl. at ¶ 34.

5

## Procedural History

On June 6, 2013, Plaintiff filed a Complaint against Defendant, asserting breach of contract and unjust enrichment claims. Plaintiff requested that the Court "find[] Defendant liable to Plaintiff" for the Early Termination Costs ($212,666.67) and the September 2012 unpaid Monthly Service Fee ($6,363.78).[12]

Plaintiff alleged that it provided internet access and network services (including the required bandwidth) in accordance with the Agreement, Defendant continued to use such services through September 2012, Defendant's "October 12[, 2012] Termination Notice constituted improper termination of the [] Agreement," Defendant breached the Agreement by "terminating the [] Agreement without cause," and that Defendant failed to pay the Early Termination Costs and the September 2012 Monthly Service Fee.[13]

Plaintiff also alleged that "Defendant has been unjustly enriched at Plaintiff's expense by utilizing Plaintiff's services [in September 2012] without compensating Plaintiff."[14]

On August 14, 2013, Defendant filed its Motion to Dismiss. Defendant asserted that the Court does not have subject matter jurisdiction over Plaintiff's contractual claims because the Agreement contains alternative dispute resolution

---

[12] Compl. at 8.

[13] Compl. at ¶¶ 23 – 30.

[14] Compl. at ¶ 36.

procedures. Defendant argues that Section 10 in the Agreement "requires [Plaintiff] to submit its claims to [alternative dispute resolution ("ADR")], and does not permit [Plaintiff] to pursue the claims in this – or any – Court."[15]

Specifically, Section 10 is titled "Dispute Resolution" and provides:

> 10.1 <u>Escalation to the Parties' Executives</u>. To the extent that controversies arising from this Agreement cannot be resolved by the respective personnel of each party responsible for the daily administration of this Agreement, the parties shall first attempt to resolve such dispute by negotiation between their respective senior executive officers.
>
> 10.2 <u>Mediation</u>. If a dispute cannot be resolved by negotiation, the controversy shall be submitted to non-binding mediation. Neither party may initiate mediation until at least twenty (20) calendar days after the initial notice of dispute is submitted as provided above. Notice of demand for mediation shall be submitted in writing and such mediation shall be conducted by a single mediator in accordance with the American Arbitration Association's ("AAA") then-current Model Mediation Procedures. Unless otherwise agreed, the mediator will be nominated by the AAA and the mediation shall be conducted in Wilmington, Delaware. The mediation filing fees and fees and costs of the mediator will be equally shared between the parties.
>
> 10.3 <u>Arbitration</u>. If a dispute cannot be resolved through mediation, the controversy shall be submitted to binding arbitration before the AAA and according to the AAA's then-current Rules of Commercial Arbitration. The arbitration shall be heard by a single arbitrator appointed pursuant to the AAA's procedures. The filing fee for the arbitration shall be paid by the party filing the

---

[15] Mot. to Dismiss, ¶ 7 (Aug. 14, 2013).

applicable Demand for Arbitration. All other costs and fees of the AAA and the arbitrator shall be shared equally by the parties. The arbitration shall be conducted in Wilmington, Delaware and shall be completed as soon as practicable after the filing of the Demand for Arbitration. Except in those cases where Smoothstone is permitted to recover costs of collection as stated herein, each party shall bear its own costs of counsel and litigation costs incurred with respect to such arbitrations. Arbitrations are to be conducted on an individual basis and not as class actions. The award of the arbitrator may be reduced to judgment in any court of competent jurisdiction.

10.4 <u>Collection Actions</u>. Notwithstanding the foregoing, at Smoothstone's option, collection matters related to monies owed by Customer may be resolved pursuant to the alternative dispute resolution procedures stated above or may be brought by Smoothstone directly in court in accordance with the forum selection clause[16] above.

10.5 <u>Actions for Preliminary Injunctive Relief</u>. Notwithstanding the foregoing, either party may initiate litigation in accordance with the forum selection clause above to seek preliminary injunctive relief against the other party with respect to matters in which the filing party claims to be suffering immediate and irreparable injury. In such matters, once the court resolves the filing party's motion for preliminary injunction, the court action shall be stayed and the case litigated to fruition through arbitration as stated above.

See http://smoothstone.com/ARDispute.php for the current dispute procedures.

---

[16] *See* Agreement at § 9 ("Governing Law and Forum Selection"), which provides:

This Agreement is executed and accepted by Smoothstone in the State of Delaware. Subject to the dispute resolution provisions stated below, Customer hereby irrevocably consents and submits, generally and unconditionally, to the exclusive personal jurisdiction of the state and federal courts sitting and having jurisdiction in Wilmington, Delaware (and all appellate courts therefrom) over any and all actions or proceedings arising out of or related to this Agreement.

On August 30, 2013, Plaintiff filed an opposition to Defendant's Motion to Dismiss.

A hearing was held on September 6, 2013. The Court reserved decision and directed the parties to submit supplemental briefing on the Court's jurisdiction to determine the arbitration clause's scope and applicability to Plaintiff's claims.[17] The parties stipulated to a briefing schedule and briefing was completed on October 28, 2013.

On January 31, 2014, the Court then directed the parties to simultaneously submit supplemental briefing on a limited issue.[18] On February 25, 2014, the parties submitted a joint letter requesting a 30-day extension to submit their supplemental briefs because they were attempting to resolve the matter.

The Court granted the parties' request on February 27, 2014 and extended the deadline to submit the supplemental briefing to March 31, 2014. On March 26, 2014, the parties submitted a joint letter requesting another 30-day extension to

---

[17] The parties were also directed to submit supplemental briefing on "Collection Actions," one of the Agreement's two exceptions to alternative dispute resolution. However, because the Court has now determined that the parties intended substantive arbitrability issues to be decided by an arbitrator, the parties' supplemental briefing on "Collection Actions" will not be addressed.

[18] The parties were directed to address whether the Agreement is subject to the Delaware Uniform Arbitration Act ("DUAA") (10 *Del. C.* Ch. 57) because the DUAA "suggests that no Court has jurisdiction to hear cases involving contracts that must be submitted to arbitration, other than the Chancery Court, which has limited review and enforcement of those arbitration agreements and proceedings." *See Tekmen & Co. v. S. Builders, Inc.*, 2005 WL 1249035, n. 1 (Del. Super. May 25, 2005) (citing 10 *Del. C.* § 5701). However, because the Court has the authority to determine whether has it subject matter jurisdiction, and the Court has now determined that an arbitrator decides substantive arbitrability issues related to the Agreement, the Court need not decide whether the DUAA applies to the Agreement at this time. *See Aquila of Del., Inc. v. Wilm. Trust Co.*, 2011 WL 1487060, *1 (Del. Super. Apr. 19, 2011).

submit their supplemental briefs. The parties again represented that they were attempting to resolve the matter. That same day (March 26, 2014), the Court granted the parties' request for a 30-day extension. On April 30, 2014, Plaintiff and Defendant submitted their supplemental briefs.

The briefing is now complete. This is the Court's decision on Defendant's Motion to Dismiss.

## **Parties' Contentions**

The parties, while acknowledging the existence of a contract, dispute the interpretation, scope, and applicability (i.e., substantive arbitrability[19]) of the "Collection Actions" exception in the alternative dispute resolution procedures of the Agreement. Both parties assert, for different reasons, that the Court should decide substantive arbitrability under the Agreement.

Defendant contends that "Delaware law presumes that a determination as to substantive arbitrability . . . is one to be made by the courts" and that neither party has "argued that this Court cannot determine" whether the Agreement's alternative dispute resolution procedures apply to Plaintiff's claims. Defendant submits that there is no clear and unmistakable evidence of the parties' intent to have an arbitrator decide substantive arbitrability because the Agreement "exempts a

---

[19] *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 906 A.2d 76, 79 (Del. 2006).

10

request for injunctive relief" similar to "the provision in [*James & Jackson, LLC v. Willie Gary, LLC*]."[20]

Plaintiff asserts that the Agreement does not "preclude this Court from deciding [substantive] arbitrability" and the Agreement's exception for injunctive relief from arbitration is "insufficient 'clear and unmistakable' intent to submit [substantive] arbitrability to arbitration."[21]

### Standard of Review

Pursuant to Superior Court Civil Rule 12(b)(1), a party may move to dismiss a claim for "[l]ack of jurisdiction over the subject matter."[22] The law is clear that courts lack subject matter jurisdiction over a claim that is "properly committed to arbitration."[23]

A motion to dismiss "will be granted if the parties contracted to arbitrate the claims asserted in the complaint."[24] This is so because this Court is required to

---

[20] Def.'s Supp. Br., 1, 2, n.1 (Sept. 27, 2013).

[21] Pl.'s Supp. Br., 1 (Oct. 18, 2013) (quoting *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d at 81).

[22] Super. Ct. Civ. R. 12(b)(1).

[23] *Aquila of Del., Inc. v. Wilm. Trust Co.*, 2011 WL 4908406, *1 (Del. Super. Oct. 10, 2011) (internal quotation marks omitted) (quoting *Carder v. Carl M. Freeman Cmtys.*, LLC, 2009 WL 106510, *3 (Del. Ch. Jan. 5, 2009)). *See also NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 (Del. Ch. 2007) ("Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate").

[24] *Elia v. Hertrich Fam. of Automobile Dealerships, Inc.*, 2013 WL 6606054, *1 (Del. Super. Dec. 13, 2013) (granting a motion to dismiss for lack of subject matter jurisdiction where the Court determined that the plaintiff's claims were subject to a valid and enforceable arbitration agreement). *See also Tekmen & Co. v. S. Builders, Inc.*, 2005 WL 1249035 at *6 (dismissing a complaint without prejudice where a procedural arbitrability issue was implicated); *Li v. Stand. Fiber, LLC*, 2013 WL 1286202, *4 (Del. Ch. Mar. 28, 2013).

11

dismiss an action when "it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter."[25]

Furthermore, although the Superior Court may not compel arbitration for matters contained in an arbitration agreement, the Court has the authority to determine whether it has subject matter jurisdiction over claims brought before it.[26]

## Discussion

In Delaware, arbitration is favored as a matter of public policy.[27] Arbitration "is a creature of contract" and, as such, an arbitration clause "applies only to claims that are connected to the obligations contained in the underlying contract."[28] A party "cannot be forced to arbitrate a claim absent a contractual or equitable duty to do so."[29] As a result, the underlying contract "must reflect that the parties clearly and intentionally bargained for whether and how to arbitrate."[30] With these

---

[25] Super. Ct. Civ. R. 12(h)(3). *See also Elia v. Hertrich Fam. of Automobile Dealerships, Inc.*, 2013 WL 6606054 at *1; *Aquila of Del., Inc. v. Wilm. Trust Co.*, 2011 WL 4908406 at *1.

[26] *Elia v. Hertrich Fam. of Automobile Dealerships, Inc.*, 2014 WL 843839, *2 (Del. Super. Mar. 4, 2014). *See also Jones v. 810 Broom St. Operations*, 2014 WL 1347746 at *1 (finding the Superior Court lacks jurisdiction to compel arbitration but has the power to determine the scope and applicability of an arbitration agreement to claims pending before it).

[27] *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396 (Del. 2010).

[28] *Aquila of Del., Inc. v. Wilm. Trust Co.*, 2011 WL 1487060 at *1. *See also Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002) (holding that an arbitration clause "should be applied only to claims that bear on the duties and obligations under the [contract]").

[29] *Behm v. Am. Intl. Group, Inc.*, 2013 WL 3981663, *5 (Del. Super. July 30, 2013) (citing *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d at 430)).

[30] *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d at 396.

12

principles in mind, courts "strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt as to arbitrability in favor of arbitration."[31]

In order to determine whether claims should be resolved through arbitration, the court must first determine whether substantive arbitrability will ultimately be decided by the court or an arbitrator.[32] This is a "threshold question."[33] "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question of 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter."[34]

Where an agreement is silent as to who decides substantive arbitrability, it is presumed that the parties intended for the courts to resolve substantive arbitrability

---

[31] *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d at 155 – 56.

[32] *See Israel Discount Bank of N.Y. v. First State Depository Co.*, 2012 WL 4459802, *5 (Del. Ch. Sept. 27, 2012) ("Before examining whether [the plaintiff's] claims must be submitted to arbitration, the Court must answer . . . whether this court or an arbitrator should decide the issue of [substantive] arbitrability"); *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1119 (Del. Ch. 2010) ("When a party invokes an arbitration provision, the Court first must determine who will decide the question of substantive arbitrability").

In the instant case, although Defendant asserts that the Court may decide substantive arbitrability because neither party has argued otherwise, Defendant has not cited any authority in support of such assertion. Furthermore, in cases where the parties did not dispute that a court should determine substantive arbitrability, the courts addressed the threshold question of who determines substantive arbitrability. *See, e.g., Medicis Pharm. Corp. v. Anacor Pharm., Inc.*, 2013 WL 4509652, *3 (Del. Ch. Aug. 12, 2013) (answering the threshold question where neither party disputed that the court should determine substantive arbitrability); *Milton Invs., LLC v. Lockwood Bros., II, LLC*, 2010 WL 2836404, *4 (Del. Ch. July 20, 2010) (deciding the threshold question of who determines substantive arbitrability, even though the parties agreed at the outset that the court had jurisdiction to determine arbitrability).

[33] *See Legend Nat. Gas II Holdings, LP v. Hargis*, 2012 WL 4481303, *4 (Del. Ch. Sept. 28, 2012) ("Even before courts confront questions of procedural and substantive arbitrability, however, they must first address the threshold question"); *Aquila of Del., Inc. v. Wilm. Trust Co.*, 2011 WL 1487060 at *1 ("The threshold question here is who decides whether the instant claims must be arbitrated: the court or the arbitrator").

[34] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d at 79 (quoting *DMS Props.-First, Inc. v. P.W. Scott Assocs., Inc.*, 748 A.2d 389, 391 – 92 (Del. 2000)).

13

issues, absent "clear and unmistakable" evidence to the contrary.[35]  A "clear and unmistakable intent to submit [substantive] arbitrability issues to an arbitrator" exists if an arbitration clause: (1) "incorporates a set of arbitration rules that empower arbitrators to decide [substantive] arbitrability" and (2) "generally provides for arbitration of all disputes" under *James & Jackson, LLC v. Willie Gary, LLC*.[36]  If both requirements are met, then the parties to the arbitration clause are deemed to have agreed to have an arbitrator decide substantive arbitrability.[37]

Application of both requirements set forth in *Willie Gary* leads to the conclusion that substantive arbitrability issues in this case should be resolved through arbitration.  Here, the Agreement's arbitration clause incorporates a set of arbitration rules that empower an arbitrator to decide substantive arbitrability and generally provides for the arbitration of all disputes.[38]

The Agreement's arbitration clause expressly references the American Arbitration Association ("AAA") Rules of Commercial Arbitration.  The AAA Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or

---

[35] *Id.*; *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d at 1120.

[36] *James & Jackson, LLC v. Willie Gary, LLC* at 80.

[37] *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d at 1120.

[38] "Because a motion to dismiss based on an arbitration clause goes to the Court's subject matter jurisdiction, the Court may consider documents outside the complaint in deciding the motion."  *Behm v. Am. Intl. Group, Inc.*, 2013 WL 3981663 at *4 (internal quotation marks omitted) (quoting *HDS Holding, Inc. v. Home Depot, Inc.*, 2008 WL 4606262, n. 1 (Del. Ch. Oct. 17, 2008), *abrogated on other grounds*, *Viacom Intl., Inc. v. Winshall*, 72 A.3d 78 (Del. 2013)).

validity of the arbitration agreement or to the arbitrability of any claim."[39] The first requirement is met.

Secondly, the Agreement's arbitration clause generally provides for the arbitration of disputes or controversies.[40] Sub-section 10.3 mandates that "controversies arising from [the] Agreement" which cannot be resolved through negotiation or non-binding mediation "shall be submitted to binding arbitration before the AAA."[41] Such broad language satisfies the second requirement of *Willie Gary*.

Furthermore, the Agreement's two exceptions to alternative dispute resolution ("Actions for Preliminary Relief" and "Collection Actions") do not preclude a court from determining that an arbitrator should decide substantive arbitrability. In *McLaughlin v. McCann*, the Court of Chancery held that:

> the carveouts and exceptions to committing disputes to arbitration should not be so obviously broad and

---

[39] AM. ARB. ASSN. COM. R. & MEDIATION PROCS., at R-7 (Oct. 1, 2013).

[40] *See, e.g., McLaughlin v. McCann*, 942 A.2d 616, 626 (Del. Ch. 2008) (concluding that the language "[i]f a dispute arises under this agreement" provided "for arbitration of a wide array of potential claims"); *BAYPO LP v. Tech. JV, LP*, 940 A.2d 20, 26 (Del. Ch. 2007) (holding "all disputes arising under the [a]greement" generally provided for the arbitration of all disputes under *Willie Gary*). *See also Carder v. Carl M. Freeman Cmtys.*, LLC, 2009 WL 106510 at *5 (noting that "any controversy arising with respect to this Agreement . . ." was an example of language cited by the Delaware Supreme Court in *Willie Gary*); *Li v. Stand. Fiber, LLC*, 2013 WL 1286202 at *6 (finding that the absence of the phrase "relating to" in an arbitration clause has been found to satisfy the *Willie Gary* test even though such clauses are "arguably not as broad" as a clause that includes "relating to" which "extends the . . . clause beyond the four corners of the agreement"). *But see, e.g., Medicis Pharm. Corp. v. Anacor Pharm., Inc.*, 2013 WL 4509652 at *3 (holding an arbitration clause did not provide for the arbitration of all disputes where the parties specified and defined disputes that "shall not be subject to arbitration"); *Milton Invs., LLC v. Lockwood Bros., II, LLC*, 2010 WL 2836404 at n. 48 (finding an arbitration clause that referred "certain types of disputes" to arbitration did not satisfy the *Willie Gary* requirement).

[41] "Dispute" and "controversy" are referred to interchangeably.

15

substantial as to overcome a heavy presumption that the parties agreed by referencing the AAA Rules and deciding to use AAA arbitration to resolve a wide range of disputes that the arbitrator, and not a court, would resolve disputes about substantive arbitrability.[42]

Thus, any exception to committing a dispute to arbitration must be "narrowly tailored."[43] It cannot "negate[] any possible conclusion that the parties demonstrated a clear and unmistakable intent to submit matters of [substantive] arbitrability to an arbitrator."[44]

---

[42] *McLaughlin v. McCann*, 942 A.2d at 625.

*McLaughlin v. McCann* was decided two years after the Delaware Supreme Court issued the *Willie Gary* decision. In *McLaughlin*, the Court of Chancery noted that its decision in *Willie Gary*, which was subsequently affirmed by the Delaware Supreme Court, "recognize[d] the strong efficiency basis for the federal majority view" that reference to the AAA rules provides clear and unmistakable evidence of the parties' intent to have an arbitrator decide substantive arbitrability. *Id.* at 622. *See also Willie Gary, LLC v. James & Jackson, LLC*, 2006 WL 75309 (Del. Ch. Jan. 10, 2006).

In *McLaughlin*, the Court of Chancery also noted that the "primary advantage of the federal majority view is that once it has been determined that an arbitration clause references the rules of an arbitral body that authorize the arbitrator to decide the issue of arbitrability, the trial court is not required to delve into the scope of the arbitration clause and the details of the contract and pending lawsuit – that is the job of the arbitrator." *Id.* at 623. The Court of Chancery held that "interpreting the 'generally provides for arbitration of all disputes' requirement to mean all disputes without exception would mean that the Delaware Supreme Court interpreted the federal majority view . . . as giving no independent weight to a reference to the AAA Rules." *Id.* at 625. The Court agrees with the Court of Chancery that such an interpretation "defeats the efficiency rationale that underlies the federal majority view." *Id.* at 624.

*McLaughlin* has been followed in subsequent decisions issued by the Court of Chancery and this Court. *See, e.g., GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d at 1119 – 1121; *Li v. Stand. Fiber, LLC*, 2013 WL 1286202 at *6; *Legend Nat. Gas II Holdings, LP v. Hargis*, 2012 WL 4481303 at *6; *Carder v. Carl M. Freeman Cmtys.*, LLC, 2009 WL 106510 at *5 – 7. *See also Medicis Pharm. Corp. v. Anacor Pharm., Inc.*, 2013 WL 4509652, *11; *Lefkowitz v. HWF Holdings, LLC*, 2009 WL 3806299, *10 (Del. Ch. Nov. 13, 2009); *Aquila of Del., Inc. v. Wilm. Trust Co.*, 2011 WL 1487060 at *2.

[43] *BAYPO LP v. Tech. JV, LP*, 940 A.2d at 26 – 27 (determining that the exception to alternative dispute resolution "was narrowly tailored to provide the parties with limited ancillary relief to protect interests during the pendency of the arbitration process"). *See also McLaughlin v. McCann*, 942 A.2d at 626 (holding an "exception allowing judicial recourse for determination of whether 'the total liability for payments in the nature of interest . . . exceed[s] the limitations now imposed by the applicable laws of the state whose laws are controlling on the subject'" was "a very narrow exception"); *Legend Nat. Gas II Holdings, LP v. Hargis*, 2012 WL 4481303 at n.43 (noting the agreement contained a "limited carveout . . . for the purpose of temporarily, preliminarily or permanently enforcing" the confidentiality and non-compete sections in any state or federal court). *But see Israel Discount Bank of N.Y. v. First State Depository Co.*, 2012 WL 4459802 at *5 (finding an arbitration provision did not generally provide for the arbitration of all disputes because of an exception that permitted either party to commence an interpleader suit).

[44] *BAYPO LP v. Tech. JV, LP*, 940 A.2d at 26 (citing *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d at 81).

Here, the Agreement's two exceptions to alternative dispute resolution are narrowly tailored. The exception for "Actions for Preliminary Relief" provides a limited opportunity for either party to seek *provisional* equitable relief[45] in matters where one of the parties is allegedly "suffering immediate and irreparable injury" and mandates that "the case is litigated to fruition through arbitration" after "the court resolves the filing party's motion for preliminary injunction."[46]

So too, the exception for "Collection Actions" allows for judicial recourse in a very limited circumstance. Specifically, the exception applies to "collection matters related to monies owed," is limited in its use (only Plaintiff has the "option" to "choose" this exception), and Plaintiff is restricted as to forum selection.[47] (The action can only be filed in "the state and federal courts sitting and having jurisdiction in Wilmington, Delaware."[48])

Thus, neither the exception for "Actions for Preliminary Relief" nor the exception for "Collection Actions" provides "the same boundless and independent

---

[45] *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d at 1121 (finding the arbitration clause's "sole carve-out is a limited opportunity to seek *provisional* relief until the arbitrator can address the parties' equitable claims") (emphasis added). *But see James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d at 79 – 80 (noting the agreement provided that "in addition to any other remedy to which the nonbreaching Members may be entitled, at law or in equity, the nonbreaching Members shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having subject matter jurisdiction thereof").

[46] Agreement at § 10.5.

[47] Agreement at § 10.4.

[48] *Id.* at § 9. *See* n. 16, *supra*.

17

access to judicial relief that prompted the ruling in *Willie Gary*."[49] Moreover, neither exception negates the conclusion that the parties demonstrated a clear and unmistakable intent to submit matters of substantive arbitrability to an arbitrator in accordance with the AAA rules referenced in the Agreement.

Where, as here, an arbitration clause satisfies both requirements of *Willie Gary*, a court is required to make a "preliminary evaluation of whether the arbitration clause even arguably covers the underlying dispute."[50] The court evaluates whether there is a "colorable basis for the court to conclude that the dispute is related to the agreement."[51] The court's analysis is "very limited"[52] and a "low threshold"[53] is applied. If there is "a colorable, 'non-frivolous argument that the underlying dispute'" should be resolved through arbitration under the agreement, then substantive arbitrability must be decided by an arbitrator.[54]

In the instant case, by disputing the interpretation of the "Collection Actions" exception, the parties seek to have the Court determine whether

---

[49] *BAYPO LP v. Tech. JV, LP*, 940 A.2d at 27.

[50] *Julian v. Julian*, 2009 WL 2937121, *6 (Del. Ch. Sept. 9, 2009).

[51] *Id.* at *7.

[52] *Legend Nat. Gas II Holdings, LP v. Hargis*, 2012 WL 4481303 at *6.

[53] *Li v. Stand. Fiber, LLC*, 2013 WL 1286202 at *9.

[54] *Behm v. Am. Intl. Group, Inc.*, 2013 WL 3981663 at *8 (quoting *Legend Nat. Gas II Holdings, LP v. Hargis*, 2012 WL 4481303 at *1, *7, *9).

Plaintiff's claims are "collection matters related to monies owed by [Defendant]."[55] Such a determination would amount "to deciding substantive arbitrability, thereby circumventing the very purpose of *Willie Gary*, which is to effectuate the clear intent of parties to [submit substantive arbitrability to an arbitrator], when such intent is shown."[56]

Defendant asserts that Plaintiff's claims are predicated on rights and obligations under the Agreement, which an arbitrator should interpret. Defendant has presented a colorable, non-frivolous argument that the underlying dispute should be resolved through arbitration. Therefore, the parties' dispute as to the interpretation, scope, and applicability of the alternative dispute resolution procedures and the "Collection Actions" exception must be decided by an arbitrator – not the Court. To the extent that there is any basis to doubt that the exception for "Collection Actions" is "not so obviously broad and substantial," pursuant to *McLaughlin v. McCann* the Court will "defer to arbitration, leaving to the arbitrator to decide what is or is not before her."[57]

## Conclusion

Therefore, because the Agreement contains an arbitration clause which references the AAA rules empowering an arbitrator to decide substantive

---

[55] Agreement at § 10.4.

[56] *Legend Nat. Gas II Holdings, LP v. Hargis*, 2012 WL 4481303 at *5.

[57] *McLaughlin v. McCann*, 942 A.2d at 625.

arbitrability and the arbitration clause generally provides for arbitration of all disputes (with two limited exceptions), the parties are deemed to have agreed to have an arbitrator decide substantive arbitrability. Neither of the Agreement's two exceptions overcomes the heavy presumption that the parties intended an arbitrator to decide substantive arbitrability when they agreed to incorporate the AAA rules in their Agreement.

Because the underlying dispute is arguably related to the Agreement and Defendant has presented a colorable, non-frivolous argument that Plaintiff's claims should be resolved through alternative dispute resolution in accordance with the Agreement, the parties' substantive arbitrability dispute must be resolved by an arbitrator rather than the Court. However, "nothing in this opinion is intended to express a view on the underlying merits or on what determination the arbitrator should make about [substantive] arbitrability."[58]

For the foregoing reasons, the Court finds that the Agreement empowers an arbitrator to decide substantive arbitrability and consequently, the Court does not have the power to determine whether the Agreement's alternative dispute resolution procedures apply to Plaintiff's claims. The parties' dispute as to the interpretation, scope, and applicability of the "Collection Actions" exception in the Agreement must be resolved by an arbitrator. Accordingly, Defendant's Motion to

---

[58] *Aquila of Del., Inc. v. Wilm. Trust Co.*, 2011 WL 1487060 at *3.

20

dismiss is hereby **GRANTED**.  The Complaint is dismissed without prejudice.  If an arbitrator determines that Plaintiff's claims are not subject to arbitration, then Plaintiff shall have leave to re-file its Complaint.

      **IT IS SO ORDERED.**

                                      _____

                                      Diane Clarke Streett
                                      Judge

Original to Prothonotary

cc:    Daniel F. Wolcott, Jr., Esquire
       Ryan M. Murphy, Esquire
       Richard L. Renck, Esquire