**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: September 6, 2022
Date Decided: November 28, 2022

Travis S. Hunter
Griffin A. Schoenbaum
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

R. Montgomery Donaldson
Richard G. Placey
Montgomery, McCracken, Walker
& Rhoads, LLP
1105 North Market Street, Suite 1500
Wilmington, DE 19801

Re: *Julius W. Erving II, et al. v. ABG Intermediate Holdings 2, LLC, et al.*
C.A. No. 2021-0816-NAC

Dear Counsel:

This Letter Opinion addresses the Defendants' motion to dismiss and compel arbitration (the "Motion"). For the reasons stated below, I grant Defendants' alternative requested relief of a stay pending the arbitrator's decision on substantive arbitrability.

## I.      BACKGROUND

I begin with a brief summary of the facts as alleged by the Plaintiffs. Julius W. Erving II, known by the moniker "Dr. J," is a basketball legend. In 2016, Mr. Erving agreed to sell a majority interest in his trademark and other intellectual property to Authentic Brands Group, LLC ("ABG"), a brand development and

marketing company.[1] ABG and its controlling member and CEO, James Salter, promised to grow Mr. Erving's brand exponentially by obtaining new licensing agreements, promotional appearances, and other marketing opportunities.[2]

In September 2016, Mr. Erving and his entity, Dr. J Enterprises, LLC, executed a series of documents to place Mr. Erving's intellectual property under the control of ABG Intermediate Holdings 2, LLC ("ABG Intermediate") and its controller, ABG.[3] To consummate the transaction, ABG Intermediate formed ABG-Dr. J, LLC ("ABG-Dr. J").[4] Mr. Erving, Dr. J Enterprises, LLC, and two other non-parties are minority members of ABG-Dr. J, while ABG Intermediate owns the rest (51%).[5] Relevant here, one of the documents executed in the transaction was the limited liability company agreement for ABG-Dr. J (the "Operating Agreement").[6] Since the transaction, ABG Intermediate, ABG, and Mr.

---

[1] *See* Verified Compl. for Specific Performance and Breach of Contract (Dkt. 1) ("Compl.") ¶¶ 1, 16–17, 20–21.

[2] *Id.*

[3] *Id.* ¶¶ 2–3, 20.

[4] *Id.* ¶¶ 3, 20.

[5] *Id.*

[6] *Id.* ¶ 23. The parties also entered an "Omnibus Agreement" contemporaneously with the Operating Agreement, "pursuant to which Mr. Erving would agree to perform certain

Salter (the "Defendants") have allegedly breached their contractual duties to Mr. Erving and Dr. J Enterprises, LLC (the "Plaintiffs") and allegedly failed to devote adequate resources to grow the "Dr. J" brand, instead effectively shelving it to focus on more profitable brands.[7]

Plaintiffs brought this suit on September 22, 2021, bringing claims for breach of contract and specific performance against ABG Intermediate.[8] Specifically, Plaintiffs allege that ABG Intermediate breached the Operating Agreement in the following ways: wrongfully diverting funds to itself to pay an unauthorized 30% management fee; using the wrong metric to determine distribution amounts, resulting in lower distributions to Plaintiffs; failing to maintain and provide Plaintiffs with documents, books, and records to which they were entitled; and failing to devote reasonable efforts to exploit the Dr. J brand as required under the

---

personal and promotional appearances." *Id.* ¶ 20. However, the parties do not rely on the Omnibus Agreement as part of the present dispute. In addition, the Omnibus Agreement contains an arbitration provision that is identical to the provision contained in the Operating Agreement. *See* Defs.' Opening Br. in Supp. of Mot. to Dismiss and Compel Arb. (Dkt. 16) ("Defs.' Opening Br.") at 5; Pls.' Opp'n to Defs.' Mot. to Dismiss & Compel Arb. (Dkt. 23) ("Pls.' Opp'n") at 10. Accordingly, this Letter Opinion focuses on the relevant provisions within the Operating Agreement only.

[7] Compl. ¶¶ 4–5.

[8] *Id.* ¶¶ 97–129, 136–40.

Operating Agreement.[9]  They also bring claims for fraud, gross negligence, willful misconduct, and unjust enrichment against ABG, ABG Intermediate, and Mr. Salter, and a claim for tortious interference against ABG and Mr. Salter.[10]

Of key importance to the parties' dispute is the "Dispute Resolution" provision within the Operating Agreement, which provides in part as follows:

> 14.5 <u>Dispute Resolution</u>. The Parties agree to submit any dispute, claim or controversy arising out of or relating to this Agreement, including the determination of the scope or applicability of the Agreement to arbitrate, to final and binding arbitration to be initiated and conducted according to either the JAMS Streamlined Arbitration Rules and Procedures (for claims under $250,000) or the JAMS Comprehensive Arbitration Rules and Procedures (for claims equal to or over $250,000) (collectively, the "JAMS Rules") to the extent the JAMS Rules are not inconsistent with or expressly modified by the terms of this Agreement. . . .  The Parties agree that the arbitrator(s), and not any court or other tribunal, shall have the exclusive power to award any preliminary or interim injunctive relief.  The arbitral tribunal shall follow the law applicable to such dispute in accordance with Section 14.3 and the Federal Rules of Evidence in adjudicating the dispute. Subject to the Parties' ability to vacate a decision or award under the Federal Arbitration Act, any decision or award of the arbitrator shall be final, binding and conclusive on the Parties to this Agreement and their respective Affiliates. . . .  If any Party refuses to perform any or all of its obligations under the final arbitration award (following any petition to correct or vacate the final arbitration award, if applicable) within thirty (30) days of such award being rendered, then the other Party may enforce the final award in any court of competent jurisdiction. . . .  Except as otherwise provided in this

---

[9] *Id.* ¶¶ 49–68; 72; 77–96.

[10] *Id.* ¶¶ 130–35, 141–63.

Agreement, arbitration shall be the sole and exclusive method of resolving all claims, disputes or proceedings relating to this Agreement.[11]

Defendants have moved to dismiss the action under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction.[12]  They contend that the Operating Agreement requires the parties to arbitrate this dispute.[13]  Alternatively, Defendants request a stay of this case pending a decision from the arbitrator.[14]

## II.    ANALYSIS

"A motion to dismiss based on an arbitration clause goes to the court's subject matter jurisdiction over a dispute and is properly reviewed under Court of Chancery Rule 12(b)(1)."[15]  "[T]his court will not 'accept jurisdiction over' claims

---

[11] Ex. A to Aff. of Marc Rosen (Dkt. 19) (Limited Liability Company Agreement for ABG-Dr. J, LLC) ("Operating Agreement") § 14.5.  Given the length of Section 14.5, only a portion of the provision is included.  The full text of Section 14.5 is set forth in Appendix A of this Letter Opinion.

[12] Defs.' Mot. to Dismiss and Compel Arb. (Dkt. 15) at 1.

[13] Defs.' Opening Br. at 2.

[14] *Id.* at 20.

[15] *Legend Nat. Gas II Hldgs., LP v. Hargis*, 2012 WL 4481303, at *4 (Del. Ch. Sept. 28, 2012).

that are properly committed to arbitration since in such circumstances arbitration is an adequate legal remedy."[16]

I acknowledge at the outset that the parties have presented vigorous arguments concerning the merits of Plaintiffs' claims against Defendants. The sole issue before me, however, is the dispute resolution provision contained in the Operating Agreement. On that, it is well-established that Delaware public policy favors arbitration.[17] Given this strong public policy, there is a presumption of arbitrability: Delaware courts "ordinarily resolve any doubt as to arbitrability in favor of arbitration"[18] and "submit a dispute to arbitration unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[19]

---

[16] *Dresser Indus., Inc. v. Glob. Indus. Techs. Inc.*, 1999 WL 413401, at *4 (Del. Ch. June 9, 1999) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del. Ch. 1987)).

[17] *See, e.g.*, *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) ("[T]he public policy of this state favors the resolution of disputes through arbitration.") (citation omitted); *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 295 (Del. 1999) ("Delaware recognizes a strong public policy in favor of arbitration."); *see generally* 10 *Del. C.* § 5701.

[18] *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002); *see also Jaffari*, 727 A.2d at 295 ("Normally, doubts on the issue of whether a particular issue is arbitrable will be resolved in favor of arbitration.").

[19] *TMIP Participants LLC v. DSW Gp. Hldgs.*, 2016 WL 490257, at *13 (Del. Ch. Feb. 4, 2016) (citation omitted); *see also Worthy v. Payne*, 1998 WL 82992, at *1 (Del. Ch. Feb.

When addressing disputes concerning contractual arbitration provisions, "this court turns first to the Delaware Uniform Arbitration Act (the 'DUAA')."[20] Under the DUAA, disputes in this Court involving arbitration must be decided in conformity with the Federal Arbitration Act (the "FAA") unless the agreement in question specifically references the DUAA.[21] The Operating Agreement makes no reference to the DUAA.[22] Furthermore, neither party disputes the applicability of the FAA. Therefore, the FAA applies.

---

12, 1998) ("[T]here is a presumption in favor of arbitration unless: it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (citation omitted).

[20] *Innovation Inst., LLC v. St. Joseph Health Source, Inc.*, 2019 WL 4060351, at *4 (Del. Ch. Aug. 28, 2019); *see also Meyers v. Quiz-Dia LLC*, 2016 WL 7048783, at *2 (Del. Ch. Dec. 2, 2016) ("Because the matter concerns arbitration, the Delaware Uniform Arbitration Act provides the pertinent law of the forum. That act incorporates the terms of the Federal Arbitration Act unless the agreement at issue explicitly references the Delaware Uniform Arbitration Act. The employment agreements do not explicitly reference the Delaware Uniform Arbitration Act, so the terms of the Federal Arbitration Act apply.").

[21] *See* 10 *Del. C.* § 5702 (a), (c); *see also Innovation Inst.*, 2019 WL 4060351, at *4 ("Under the DUAA, unless the agreement at issue explicitly references the DUAA, the courts of this state will incorporate the Federal Arbitration Act . . . as the binding source of statutory law.").

[22] *See* Operating Agreement § 14.5.

On a motion to dismiss and compel arbitration, the court must consider whether the threshold issue of substantive arbitrability—who decides the question of arbitrability—should be decided by the court or the arbitrator.[23]  When the FAA applies, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."[24]  Delaware courts have adopted legal tests to determine who should decide this question: "The general rule, announced by the United States Supreme Court and followed by this Court, is that courts should decide questions of substantive arbitrability.  There is an exception, however, when there is 'clear and unmistakable evidence' that the parties intended otherwise."[25]

In *James & Jackson, LLC v. Willie Gary, LLC*, the Delaware Supreme Court held that parties evidence a clear and unmistakable intent to submit the question of

---

[23] *See Hargis*, 2012 WL 4481303, at *4 ("Even before courts confront questions of procedural and substantive arbitrability, however, they first must address the threshold question of who should decide whether the parties have agreed to submit the arbitrability issue to arbitration.") (citation omitted).

[24] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at *9 (Del. Ch. Mar. 30, 2020) ("Section 2 of the FAA mandates that arbitration agreements are to be enforced as contracts and it *does not* alter background principles of state contract law regarding the scope of agreements (including who is bound by them).") (emphasis in original) (citation omitted).

[25] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

arbitrability to the arbitrator when "the arbitration clause generally provides for arbitration of all disputes and also incorporates a set of arbitration rules that empower arbitrators to decide arbitrability."[26]  After *Willie Gary*, "[t]his Court subsequently held in *McLaughlin v. McCann* that to realize the efficiency goals of the *Willie Gary* rule, 'absent a clear showing that the party desiring arbitration has essentially no non-frivolous argument about substantive arbitrability to make before the arbitrator, the court should require the signatory to address its arguments against arbitrability to the arbitrator.'"[27]  In addition, when "a contract clearly and unmistakably provides that an arbitrator will decide substantive arbitrability, then the contract controls."[28]

Through Section 14.5 of the Operating Agreement, the parties clearly and unmistakably agreed to submit the issue of arbitrability to the arbitrator.  In particular, Section 14.5 provides that "[t]he parties agree to submit any dispute, claim or controversy arising out of or relating to this Agreement, *including the*

---

[26] *Id.* at 80.

[27] *Glazer v. All. Beverage Distrib. Co.*, 2017 WL 822174, at *2 (Del. Ch. Mar. 2, 2017) (quoting *McLaughlin v. McCann*, 942 A.2d 616, 627 (Del. Ch. 2008)).

[28] *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1119 (Del. Ch. 2010).

*determination of the scope or applicability of the Agreement to arbitrate*, to final and binding arbitration[.]"[29] Section 14.5 also passes both prongs of the *Willie Gary* test. It "generally provides for arbitration of all disputes"[30] and "incorporates a set of arbitration rules that empower[s] arbitrators to decide arbitrability."[31] Thus, no matter how one slices it—whether by the plain terms of the provision or under the *Willie Gary* test—the threshold question of arbitrability should be resolved in arbitration.

Plaintiffs assert two primary arguments against arbitration. First, they argue that the Operating Agreement "contains a conflicting exclusive jurisdiction provision in Section 14.4—which Plaintiffs cited in the Complaint[.]"[32] Because

---

[29] Operating Agreement § 14.5 (emphasis added).

[30] *Willie Gary*, 906 A.2d at 80; *see also* Operating Agreement § 14.5 ("The parties agree to submit *any* dispute, claim or controversy arising out of or relating to this Agreement . . . to final and binding arbitration . . . . Except as otherwise provided in this Agreement, arbitration shall be the *sole and exclusive method* of resolving all claims, disputes or proceedings relating to this Agreement.") (emphases added).

[31] *Willie Gary*, 906 A.2d at 80; *see also* Operating Agreement § 14.5 (providing for arbitration "according to either the JAMS Streamlined Arbitration Rules and Procedures (for claims under $250,000) or the JAMS Comprehensive Arbitration Rules and Procedures (for claims equal to or over $250,000)"); Defs.' Opening Br. at 12–13 ("Rule 11 of the JAMS Comprehensive Rules and Procedures states that 'The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.'").

[32] Pls.' Opp'n at 2.

of the "ambiguity created by the conflicting dispute resolution provisions,"

Plaintiffs say, this Court must deny the Motion and press forward.[33]

Section 14.4 of the Operating Agreement provides:

> 14.4 <u>Jurisdiction.</u> Each member hereby consents to the exclusive jurisdiction of the state and federal courts sitting in Delaware. Each Member further agrees that personal jurisdiction over it may be effected by service of process by registered or certified mail addressed as provided in Section 14.1, and that when so made shall be as if served upon him or her personally within the State of Delaware.[34]

While I agree with Plaintiffs that, "where a contract contains two conflicting

provisions, the document is rendered ambiguous,"[35] I disagree that there is a conflict

between the arbitration provision and the jurisdiction provision that "cannot be

resolved."[36]

---

[33] *Id.*

[34] Operating Agreement § 14.4.

[35] *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *12 (Del. Ch. Dec. 7, 2012).

[36] *See* Pls.' Opp'n at 8.

This is not a case where two contracts have "dueling arbitration clauses"[37] or forum selection clauses,[38] like many of the cases Plaintiffs rely on. Rather, these two provisions can—and should—be read harmoniously, with Section 14.4 directed simply to personal jurisdiction and to channeling any court filing that might be made, for whatever reason, into Delaware.[39] Indeed, that is exactly what happened here. Plaintiffs sought to avoid application of the arbitration requirement but, in doing so, had to bring their claim in a Delaware court. And, as Defendants persuasively point out,[40] there are various reasons why members of a Delaware LLC

---

[37] *UPM-Kymmene Corp. v. Renmatix, Inc.*, 2017 WL 4461130, at *7 (Del. Ch. Oct. 6, 2017); *see also AffiniPay, LLC v. West*, 2021 WL 4262225, at *1 (Del. Ch. Sept. 17, 2021) (concluding that "it is impossible to discern which arbitrator the parties intended to decide the matter of arbitrability given the parties' agreement to three different dispute resolution provisions").

[38] *See Duff*, 2012 WL 6096586, at *12 (holding that two forum selection provisions in different agreements conflict, making "the parties' intent as to a contractual choice of forum here far from 'crystalline'"); *CRE Niagara Hldgs., LLC v. Resort Gp., Inc.*, 2021 WL 1292792, at *5–7 (Del. Super. Ct. Apr. 7, 2021) (determining, in a "battle of the forum selection clauses," which one governs).

[39] *See, e.g.*, *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2012 WL 2356489, at *6 (Del. Ch. June 21, 2012) ("Delaware law requires that this court attempt to give effect to the plain terms of all provisions of a contract, and to give them a harmonious reading."); *Menn v. ConMed Corp.*, 2022 WL 2387802, at *38 (Del. Ch. June 30, 2022) (recognizing "the principle of contract interpretation that requires this court to interpret the various provisions of a contract harmoniously").

[40] *See* Reply Br. in Further Supp. of Defs.' Mot. to Dismiss & Compel Arb. (Dkt. 25) ("Defs.' Reply Br.") at 5–7. I also disagree with Plaintiffs' assertion that Defendants

would consent to jurisdiction in Delaware courts in the same agreement where they agree to arbitrate disputes arising from the agreement, including for purposes of seeking a court order compelling arbitration or confirming the arbitration award.[41]

Given this plain language, I believe there is no "irreconcilable conflict" between the two provisions, as Plaintiffs assert,[42] and the jurisdiction provision is consistent with the arbitration provision. And according to the plain language of the arbitration provision, the parties agreed to send the issue of substantive arbitrability to the arbitrator.

In addition, even if I were to conclude that Section 14.4 renders Section 14.5 ambiguous, I do not read the language of Section 14.4 as "so obviously broad and

---

"waived" the ability to respond to Plaintiffs' opposition arguments in their reply brief. *See* Pls.' Opp'n at 7 n.3. Defendants properly responded to arguments raised in Plaintiffs' opposition papers.

[41] I note that Section 14.5's provision that a "Party may enforce the final award in any court of competent jurisdiction" (Operating Agreement § 14.5) is also consistent with the understanding described above in that Section 14.4 identifies the state and federal courts sitting in Delaware as the courts of competent jurisdiction here. *See* Defs.' Reply Br. at 5–6 (citing 9 U.S.C. § 9 and stating that, "by consenting to jurisdiction of Delaware courts, and to personal jurisdiction in the state of Delaware, the Members of the LLC make it possible to enforce any arbitration award in Delaware").

[42] Pls.' Opp'n at 11 (first citing *O'Shaugnessy v. Young Living Essential Oils, LC*, 2019 WL 5296359, at *4 (W.D. Tex. Oct. 18, 2019); then citing *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 614–15 (10th Cir. 2014)).

substantial as to overcome a heavy presumption" that the parties intended to submit disputes to an arbitrator.[43]  As a consequence, the result here would not change.

Second, Plaintiffs argue that the Operating Agreement "carves out actions for specific performance from the arbitration clause," and therefore "did not delegate to the arbitrator authority to resolve all potential claims."[44]  Section 14.7 of the Operating Agreement provides:

> 14.7 <u>Injunctive Relief; Specific Performance</u>.  The parties hereby agree and acknowledge that a breach of any material term, condition or provision of this Agreement that provides for an obligation other than the payment of money would result in severe and irreparable injury to the other party, which injury could not be adequately compensated by an award of money damages, and the parties therefore agree and acknowledge that they shall be entitled to injunctive relief in the event of any breach of any material term, condition or provision of this Agreement, or to enjoin or prevent such a breach, including without limitation an action for specific performance hereof, and the parties hereby irrevocably consent to the issuance of any such injunction.  The parties further agree that no bond or surety shall be required in connection therewith.[45]

In essence, Plaintiffs argue that, because the Operating Agreement mandates arbitration "except as otherwise provided in this agreement," it contemplates that

---

[43] *McLaughlin*, 942 A.2d at 625.

[44] Pls.' Opp'n at 4–5, 9.

[45] Operating Agreement § 14.7.

some claims may be brought outside of arbitration—in particular, actions for "specific performance" as described in Section 14.7.[46] But Delaware courts have held that language regarding injunctive relief or specific performance does not override mandatory arbitration provisions in contracts,[47] "including disputes over substantive arbitrability."[48]

The fact that the Operating Agreement allows for injunctive relief does not remove Plaintiffs' claim for specific performance (Count IV) from the scope of the arbitrator's jurisdiction under Section 14.5. Indeed, Plaintiffs are not precluded at

---

[46] Pls.' Opp'n at 9.

[47] *See, e.g., Blackmon v. O3 Insight, Inc.*, 2021 WL 868559, at *3 (Del. Ch. Mar. 8, 2021) ("I also note that while the Stockholders Agreement preserves, at Section 9.13, a right to seek equitable relief in court, it does not preclude equitable relief from being sought via arbitration; in fact, it preserves 'all other rights and remedies that may be available to [the parties] in respect of' a breach requiring equitable relief. In other words, Section 9.13 is a permissive out, not a limitation on the otherwise-comprehensive jurisdiction of the arbitrator."); *Riley v. Brocade Commc'n Sys., Inc.*, 2014 WL 1813285, at *2 (Del. Ch. May 6, 2014) ("[Plaintiff] argues that Paragraph 17 of the Release . . . is subject to an equitable carve-out . . . . He therefore contends that Paragraph 17 does not refer 'all disputes' to arbitration and is otherwise not clear and unmistakable evidence of the parties' intention to arbitrate. *However, this issue has been addressed.* In *GTSI Corp.*, an agreement contained a general equitable remedy carve-out . . . in addition to a broad arbitration clause which mandated that any dispute between the parties 'shall' go to arbitration. The Court determined that the terms of the arbitration provision using the phrase 'shall' required an arbitrator to determine the issue of arbitrability, despite the equitable remedy provision. The same result should apply here.") (emphasis added).

[48] *Innovation Inst.*, 2019 WL 4060351, at *5.

all from seeking specific performance in arbitration. Under the arbitration rules incorporated into the Operating Agreement, an arbitrator "may grant any remedy or relief that is just and equitable and within the scope of the Parties' Agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy."[49] More importantly, whether the claim for specific performance here is subject to the arbitration clause is for the arbitrator to decide.

Even if I were to agree that this Court, rather than the arbitrator, is required to determine the substantive arbitrability of Plaintiffs' claim for specific performance separately from Plaintiffs' other claims, this claim would still likely be subject to the Operating Agreement's arbitration clause under Delaware law. Where a contract contains a broad arbitration provision, parties must submit to arbitration "any issues that touch on contract rights or contract performance."[50] A claim "touches on" a contract right or contract performance if the claim "depend[s] on the existence of the agreement that contains the arbitration provision."[51] In

---

[49] JAMS Rule 24(c).

[50] *Parfi Hldg. AB*, 817 A.2d at 155.

[51] *Rummel Klepper & Kahl, LLP v. Del. River & Bay Auth.*, 2022 WL 29831, at *11 (Del. Ch. Jan. 3, 2022) (citation omitted).

determining the arbitrability of a given claim, "[t]he only question a court should decide is whether the subject matter in dispute falls within an arbitration provision."[52]

The scope of the Operating Agreement's arbitration provision is broad.[53] Furthermore, Plaintiffs' claim here is one demanding specific performance of the Operating Agreement—this claim clearly is dependent on the existence of the Operating Agreement, which contains the arbitration provision. Therefore, even assuming, for the sake of argument, that I must determine the substantive arbitrability of Plaintiffs' claim for specific performance separately, I would likely conclude that this claim would still be subject to the arbitration provision because it "touches on" performance of the Operating Agreement.

Having rejected Plaintiffs' arguments, I am convinced that the arbitrator must decide the issue of arbitrability. "The ensuing question is what to do with this action

---

[52] *CLP Toxicology, Inc. v. Casla Bio Hldgs. LLC*, 2021 WL 2588905, at *9 (Del. Ch. June 14, 2021).

[53] *See Parfi Hldg. AB*, 817 A.2d at 155 (holding that an arbitration provision submitting to arbitration "any dispute, controversy, or claim arising out of or in connection with" the agreement was broad). The arbitration provision in the Operating Agreement is almost identical to the broad arbitration provision at issue in *Parfi*.

in the meantime."[54]  Defendants have asked this Court to dismiss the case or, in the

alternative, for a stay.  Vice Chancellor Laster has provided insightful direction on

this point:

> Whether to stay or dismiss this action pending the arbitrator's decision
> is a procedural matter governed by the law of the forum. . . .  Section 3
> of the [FAA] provides for a stay of proceedings when "the issue
> involved in . . . [a] proceeding is referable to arbitration."  The issue of
> arbitrability is referable to arbitration, so MacDonald and Smythe's
> claims under their employment agreements are stayed pending the
> arbitrator's decision.  If the arbitrator determines that their claims are
> arbitrable, then those claims will be dismissed in this action for lack of
> jurisdiction.[55]

This analysis is directly applicable here.  As in *Meyers*, the Operating

Agreement does not specifically reference the DUAA.  Under Section 3 of the

FAA,[56] and in this Court's discretion,[57] I believe a stay is the best path forward.

---

[54] *Meyers*, 2016 WL 7048783, at *2.

[55] *Id.* at *2–3 (citations omitted).

[56] *See* 9 U.S.C. § 3 (providing that if an issue is "referable to arbitration under an agreement," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

[57] *See, e.g.*, *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3545305, at *2 (Del. Ch. July 23, 2018) ("The Court's right to grant a stay is within the exclusive discretion of the Court. The discretion to issue a stay is inherent in every court and flows from its control over the disposition of cases on its docket.") (citation omitted).

### III. CONCLUSION

Because the parties evidenced a clear and unmistakable intent to have the arbitrator decide issues of substantive arbitrability, the action is STAYED pending the arbitrator's decision. "If the arbitrator determines the claim is arbitrable, then this action will be dismissed for lack of jurisdiction . . . . If the arbitrator determines the matter is not arbitrable, then the parties may return to this Court for further proceedings."[58] The parties shall confer and submit a form of implementing order within ten (10) days.

IT IS SO ORDERED.

Sincerely,

*/s/ Nathan A. Cook*

Nathan A. Cook
Vice Chancellor

cc:     All counsel of record (by File & Serve*Xpress*)

---

[58] *Innovation Inst.*, 2019 WL 4060351, at *6.

# APPENDIX A

# OPERATING AGREEMENT § 14.5

14.5 <u>Dispute Resolution</u>. The Parties agree to submit any dispute, claim or controversy arising out of or relating to this Agreement, including the determination of the scope or applicability of the Agreement to arbitrate, to final and binding arbitration to be initiated and conducted according to either the JAMS Streamlined Arbitration Rules and Procedures (for claims under $250,000) or the JAMS Comprehensive Arbitration Rules and Procedures (for claims equal to or over $250,000) (collectively, the "JAMS Rules") to the extent the JAMS Rules are not inconsistent with or expressly modified by the terms of this Agreement. The arbitration shall be conducted in New York, New York or any other location the parties may agree upon, in accordance with the JAMS Rules. The arbitral tribunal in any dispute in which the total value of all claims and counterclaims is less than one million dollars ($1,000,000) shall consist of a single arbitrator who shall be appointed pursuant to the JAMS Rules pertaining to the selection of a single arbitrator. In any dispute in which the total value of the claims and counterclaims is one million dollars ($1,000,000) or more, the arbitral tribunal shall consist of three (3) arbitrators. In disputes for which three arbitrators shall preside, the Dr J Member shall appoint one arbitrator and the ABG Member shall appoint one arbitrator, in each case within thirty (30) days after any request for arbitration hereunder. The two arbitrators thus appointed shall choose the third arbitrator within thirty (30) days after their appointment; <u>provided</u>, however, that if the two arbitrators are unable to agree on the appointment of the third arbitrator within thirty (30) days after their appointment, either arbitrator may petition JAMS to make the appointment. No arbitrator shall be affiliated with any Party hereto or any of their Affiliates. The Parties agree that the arbitrator(s), and not any court or other tribunal, shall have the exclusive power to award any preliminary or interim injunctive relief. The arbitral tribunal shall follow the law applicable to such dispute in accordance with Section 14.3 and the Federal Rules of Evidence in adjudicating the dispute. Subject to the Parties' ability to vacate a decision or award under the Federal Arbitration Act, any decision or award of the arbitrator shall be final, binding and conclusive on the Parties to this Agreement and their respective Affiliates. The arbitral tribunal will provide a detailed written statement of decision within sixty (60) days after the appointment of the last arbitrator and not more than thirty (30) days after a hearing regarding a dispute, or as promptly as possible thereafter. The arbitral tribunal's detailed written statement of decision will be part of the arbitration award and admissible in any judicial proceeding to confirm, correct or vacate the award and such written statement shall declare a prevailing

party and a non-prevailing party. If any Party refuses to perform any or all of its obligations under the final arbitration award (following any petition to correct or vacate the final arbitration award, if applicable) within thirty (30) days of such award being rendered, then the other Party may enforce the final award in any court of competent jurisdiction. The non-prevailing party will reimburse the prevailing party for its reasonable attorneys' fees incurred in connection with such arbitration, including the cost of any arbitration administrative fee and the compensation of the arbitral tribunal. Except as otherwise provided in this Agreement, arbitration shall be the sole and exclusive method of resolving all claims, disputes or proceedings relating to this Agreement. Consistent with the mutual interest of reducing the cost and promoting the expeditious resolution of any disputes under this Agreement, the Parties intend that discovery of documents and testimony in the arbitration shall be limited respectively to (i) the initial exchange of documentation described in Rule 17(a) of the JAMS Comprehensive Arbitration Rules & Procedures (effective July 1, 2014), and (ii) a single deposition per side, unless otherwise ordered by the arbitral tribunal upon a showing of good cause by either Party. The Parties adopt and agree to implement the JAMS Optional Arbitration Appeal Procedure (as it exists on the effective date of this Agreement) with respect to any final award in an arbitration arising out of or related to this Agreement; provided, that the size of the arbitral tribunal in connection therewith shall be determined by the procedures set forth above in this Section 14.5.