# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CSP N3 SPONSOR LLC AND CAPSTACK REAL ESTATE FUND L.P., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N22C-07-157 PAW |
| MATTHEW GROSSMAN AND JMG CAPITAL PROPERTIES LLC, | ) ) ) | |
| Defendants. | ) ) | |

Submitted: January 25, 2023
Decided: March 9, 2023

*Upon Defendants' Motion to Dismiss, or, in the alternative, Stay*:
**GRANTED IN PART AND DENIED IN PART**.

## MEMORANDUM OPINION AND ORDER

Charles J. Brown, Esq., of GELLERT SCALI BUSENKELL & BROWN, LLC, *Attorney for Plaintiffs*.

Adam L. Balick, Esq., and Melony Anderson, Esq., of BALICK & BALICK, LLC, *Attorneys for Defendants*.

Winston, J.

## I.     INTRODUCTION

Plaintiffs CSP N3 Sponsor LLC ("CSP") and Capstack Real Estate Fund L.P. ("Capstack") filed a declaratory judgment action and misappropriation of trade secrets claim against Defendants Matthew Grossman and JMG Capital Properties, LLC ("JMG Capital"). Plaintiffs' declaratory judgment action seeks a declaration that Capstack owes no obligations to Mr. Grossman and JMG Capital. Plaintiffs' misappropriation of trade secrets claim seeks damages arising out of Mr. Grossman's alleged misappropriation of CSP's trade secrets which he obtained access to through a consulting agreement executed with CSP (the "Fee Agreement"). Defendants have moved to dismiss this action for lack of subject matter jurisdiction and on the grounds of *forum non conveniens* (the "Motion"). For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On or about November 3, 2020, Mr. Grossman and CSP entered into the Fee Agreement, whereby Mr. Grossman, through his affiliated entity JMG SFR LLC ("JMG SFR"), would work as a consultant for CSP.[1] Pursuant to the Fee Agreement, Mr. Grossman was to provide CSP his expertise in real estate analysis, asset management, and investment management.[2] In exchange, Mr. Grossman would

---

[1] Compl. ¶ 6. The parties dispute whether Mr. Grossman executed the Fee Agreement in his individual capacity or on behalf of JMG SFR.
[2] Defs.' Opening Br. Ex. A ¶¶ 2-3 (hereinafter "Fee Agreement").

receive a percentage of the net fees collected by CSP on the capital contributions made into CSP's investment vehicle (the "Investment") by members which were referred by or affiliated with Mr. Grossman.[3] Mr. Grossman was also to receive 100% of the net fees collected from the $125,000 capital contribution made by JMG SFR into the Investment.[4] As a CSP consultant, Mr. Grossman had access to CSP's confidential information and trade secrets.[5] And under the Fee Agreement, Mr. Grossman agreed to maintain the confidentiality of this information during the term of the Fee Agreement and after its expiration.[6] The Fee Agreement's arbitration provision states:

> Except to the extent required by the Act, any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Miami, Florida before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. Judgment on the award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.[7]

---

[3] *Id.*
[4] *Id.* ¶ 3(a)(i).
[5] Compl. ¶ 7.
[6] *Id.*
[7] Fee Agreement ¶ 4.

Following the formation of Capstack[8] in March 2021, Mr. Grossman began negotiating the terms of his involvement in Capstack with David Blatt.[9]  However, Mr. Blatt and Mr. Grossman could not agree on the role Mr. Grossman would have at Capstack.[10]  Subsequently, Mr. Grossman decided to end his relationship with Capstack.[11]  Capstack then returned to Mr. Grossman the funds he had advanced to CSP in anticipation of his involvement with Capstack.[12]  At some point after Capstack and Mr. Grossman ended their relationship, CSP learned Mr. Grossman violated the Fee Agreement by, *inter alia*, using CSP's confidential customer and investor lists to solicit investments for JMG Capital.[13]

On or about June 14, 2022, Mr. Grossman, through legal counsel, sent a settlement demand letter (the "Demand Letter") to Capstack asserting he was owed an additional sum of $275,000.  Mr. Grossman based his demand on the parties' express oral agreement, clear course of performance, and prior course of dealing.[14]  Specifically, $275,000 represented the profit Capstack received from certain

---

[8] Capstack is an affiliate of CSP.  Compl. ¶¶ 1-2.
[9] Compl. ¶ 8.  Mr. Blatt formed Capstack and is the manager of CSP.
[10] *Id.* ¶¶ 9-10.
[11] *Id.*
[12] *Id.* ¶ 11.
[13] *Id.* ¶ 14.
[14] *Id.* ¶ 12.

4

Grossman-generated investments.[15] The Demand Letter stated "[t]his settlement demand will remain open for thirty days."[16]

Following the expiration of the thirty-day window, Plaintiffs filed the instant action. Count I seeks a declaratory judgment that Capstack owes no obligations to Defendants.[17] Count II alleges Mr. Grossman misappropriated CSP's trade secrets and confidential information in violation of state and federal law.[18] Five days after Plaintiffs filed the instant action, Defendants filed a notice with summons in the Supreme Court of the State of New York against Plaintiffs and additional defendants Mr. Blatt and Capstack Partners LLC (the "New York Litigation").[19] Defendants then filed the instant Motion pursuant to Superior Court Civil Rules 12(b)(1) and 12(b)(3).[20] The Court heard argument on the Motion, and, at the end of the hearing, the Court took the Motion under advisement.

### III. PARTIES' CONTENTIONS

Defendants make two arguments in support of their Motion. First, they claim that both Counts are subject to the arbitration provision contained in the Fee Agreement.[21] Second, in the event the Court concludes one or both Counts are not

---

[15] *Id.*
[16] Defs' Opening Br. Ex. B at 6 (hereinafter "Demand Letter").
[17] *Id.* ¶¶ 16-20.
[18] *Id.* ¶¶ 22-26.
[19] Defs.' Opening Br. at 7.
[20] Defs.' Motion to Dismiss, or, in the Alternative, Stay at 1.
[21] Defs.' Opening Br. at 14-16.

subject to arbitration, Defendants argue that this Court should dismiss or stay the action on the grounds of *forum non conveniens* in favor of the New York Litigation.[22] Defendants further contend that the typical *forum non conveniens* hardship analysis does not apply because Plaintiffs filed their declaratory judgment action in anticipation of imminent litigation.[23]  Instead, Defendants assert this Court should look to the factors discussed in *Burris v. Cross* to determine whether Plaintiffs' declaratory judgment action should be dismissed or stayed pending the outcome of the New York Litigation.[24]

Plaintiffs respond by asserting that neither Defendant is a party to the Fee Agreement and thus their claims against Defendants are not subject to the arbitration provision, and that, in any event, their claims do not rely upon the Fee Agreement.[25] In the alternative, Plaintiffs contend that Defendants waived their right to arbitration by initiating the New York Litigation.[26]  Plaintiffs also assert the factors in *Burris v. Cross* should not apply because their declaratory judgment action was not filed in anticipation of imminent litigation, and that this Court is the proper forum to resolve all disputes between the parties.[27]

---

[22] *Id.* at 17.
[23] *Id.* at 17-18.
[24] *Id.*
[25] Pls.' Answering Br. at 5-8.
[26] *Id.* at 9-10.
[27] *Id.* at 10-16.

## IV. STANDARD OF REVIEW

### A. MOTION TO DISMISS BASED ON LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Superior Court Civil Rule 12(b)(1), a party may move to dismiss a claim for "[l]ack of jurisdiction over the subject matter."[28] "The burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention."[29] When reviewing a motion to dismiss based on lack of subject matter jurisdiction, the court may consider documents outside the pleadings and "need not accept Plaintiff's factual allegations as true."[30] "The law is clear that courts lack subject matter jurisdiction over a claim that is 'properly committed to arbitration.'"[31]

---

[28] Super. Ct. Civ. R. 12(b)(1).

[29] *Donofrio v. Peninsula Healthcare Servs., LLC*, 2022 WL 1054969, at *2 (Del. Super. Ct. Apr. 8, 2022) (citation omitted).

[30] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) *(quoting Philips v. County of Bucks*, 1999 WL 600541, at *1 (E.D. Pa. Aug. 9, 1999) ("Unlike the standards employed in Rule 12(b)(6) analysis, the guidelines for the Court's review of a Rule 12(b)(1) motion are far more demanding of the non-movant. The burden is on the Plaintiffs to prove jurisdiction exists. Further, the Court need not accept Plaintiffs factual allegations as true and is free to consider facts not alleged in the complaint.")).

[31] *West IP Commc'n., Inc. v. Xactly Corp.*, 2014 WL 3032270, at *5 (Del. Super. Ct. June 25, 2014) *(quoting Aquila of Del., Inc. v. Wilm. Trust Co.,* 2011 WL 4908406, at *1 (Del. Super. Ct. Oct. 10, 2011)).

**B.** **Motion to Dismiss Based on the Grounds of *Forum Non Conveniens***

Even when a court has subject matter jurisdiction over a claim, it can still be dismissed on the grounds of *forum non conveniens*.[32] "A motion raising *forum non conveniens* is a request that a court possessing both personal and subject matter jurisdiction over an action nevertheless decline to hear it."[33] A plaintiff's choice of forum is typically respected and overwhelming hardship, not mere inconvenience must be shown to warrant relief.[34]

## V. **DISCUSSION**

### A. **The Arbitrability Determination**

Arbitrability questions arise when parties disagree about whether an arbitration agreement extends to a particular issue. Disputes concerning whether an arbitration agreement encompasses certain claims is a question of substantive arbitrability. It is undisputed that the issue here is one of substantive arbitrability.

Arbitration is a matter of contract, and as such, parties cannot be required to submit to arbitration any dispute which they have not agreed to submit.[35] As a result,

---

[32] Civil Rule 12(b)(3).

[33] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1193 (Del. Super. Ct. 2020) (*citing Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. P'ship.,* 669 A.2d 104, 106 (Del. 1995)).

[34] *Taylor v. LSI Logic Corp.*, 689 A.2d 1196, 1198-1199 (Del. 1997).

[35] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006) (citing *Housam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct, 154, L.Ed.2d 191 (2002)("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit")).

before addressing questions of substantive arbitrability, the Court must determine whether a valid arbitration agreement exists.[36] Therefore, to determine whether a claim is properly subject to arbitration, the Court engages in a two-part analysis.[37] The Court must determine:

1)      Whether a valid arbitration agreement exists;[38] and

2)      Whether the court or arbitrator decides issues of substantive arbitrability.[39]

First, "where the putative contract is in the form of a signed writing, that document generally offers the most powerful and persuasive evidence of the parties' intent to be bound."[40] The principles of contract interpretation are well-established in Delaware. When interpreting a contract, "courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language."[41] Contracts are interpreted to 'give each provision and term effect' and not render any terms

---

[36] *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Fairstead Cap. Mgmt. LLC v. Blodgett*, 2023 WL 11540, at *18 (Del. Ch. Jan. 6, 2023) ("a court must address issues of contract formation before deferring to an arbitrator to resolve the who-decides question under a delegation provision")(citations omitted).

[37] *Fairstead Cap. Mgmt. LLC v. Blodgett*, 2023 WL 115540, at *14-15 (Del. Ch. Jan. 6, 2023).

[38] *Id.* at *18 (*quoting Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

[39] *Id.* at *17.

[40] *Eagle Force Holdings., LLC v. Campbell*, 187 A.3d 1209, 1230 (Del. 2018) (*citing Seiler v. Levitz Furniture Co. E. Region*, 367 A.2d 999, 1005 (Del. 1976)).

[41] *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (citations omitted).

'meaningless or illusory."[42]  When contract language is clear and unambiguous, the court will give effect to the plain meaning of its terms and provisions.[43]

If, a court determines that the parties have contracted to arbitrate, the next issue the Court decides is whether the Court or arbitrator will decide issues of substantive arbitrability.  It is presumed that substantive arbitrability is an issue for judicial determination, unless there is clear and unmistakable evidence to the contrary.[44]  A clear and unmistakable intent among the parties to submit substantive arbitrability issues to the arbitrator is found when the arbitration clause contains an express provision that substantive arbitrability issues will be determined by an arbitrator.[45]

### B.    PLAINTIFFS' MISAPPROPRIATION OF TRADE SECRETS CLAIM IS SUBJECT TO ARBITRATION

Count II, Plaintiffs' misappropriation of trade secrets claim, alleges CSP discovered that Mr. Grossman violated the Fee Agreement and misappropriated CSP's trade secrets by, *inter alia*, utilizing CSP's customer and investor lists to solicit CSP's customers and investors to invest in Mr. Grossman's affiliated

---

[42] *Id. (quoting Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citation omitted)).

[43] *Id.*

[44] *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).

[45] *Donofrio v. Peninsula Healthcare Servs., LLC*, 2022 WL 1054969, at *3 (Del. Super. Ct. Apr. 8, 2022) (*citing GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1119 (Del. Ch. 2010)).

company, JMG Capital.[46] Defendants contend this claim is subject to arbitration, since the only basis for Mr. Grossman's access to CSP's trade secrets was by virtue of the Fee Agreement.[47] Yet, Plaintiffs argue that their misappropriation claim is not subject to arbitration because (1) Mr. Grossman is not a party to the Fee Agreement, and (2) regardless of whether Mr. Grossman is party to the Fee Agreement, their misappropriation claim does not rely upon the Fee Agreement.[48] The Court disagrees.

### 1. A valid arbitration agreement exists between Mr. Grossman and CSP

Plaintiffs' first argument, that Mr. Grossman is not a signatory to the Fee Agreement, is easily disposed by reviewing the Fee Agreement. A plain reading of the Fee Agreement evidences that CSP entered into the Fee Agreement with Mr. Grossman in his individual capacity. First, the Fee Agreement states: "This FEE AGREEMENT ("Agreement") is entered into by and between CSP N3 Sponsor LLC ("Company") and Matthew Grossman identified below ("Consultant") (collectively, the "Parties")."[49] Second, Plaintiffs' argument that the signature block signifies Mr. Grossman was signing on behalf of his entity JMG SFR is belied by the express terms of the agreement. The sentence before the signature block states, "IN

---

[46] Compl. ¶ 14.
[47] Defs.' Opening Br. at 14.
[48] Pls.' Answering Br. at 5-8.
[49] Fee Agreement at 1.

WITNESS WHEREOF, intending to be legally bound hereby, the undersigned has executed this Agreement as of the date set forth below as a Member of the Company or *individually*."[50]  As noted above, the Fee Agreement defines CSP as "Company". Thus, it is clear to the Court that CSP contracted with Mr. Grossman in his individual capacity.[51]  Therefore, the Court concludes Mr. Grossman is a party to the Fee Agreement.

### 2. The Arbitration Provision delegates issues of substantive arbitrability to the arbitrator

Having determined Mr. Grossman is a party to the Fee Agreement, the next issue is whether CSP and Mr. Grossman agreed to submit substantive arbitrability issues to the arbitrator.  This issue can similarly be disposed of with a plain reading of the Fee Agreement's arbitration provision.  The arbitration clause provides that "any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity thereof, *including the determination of the scope or applicability of this Agreement to arbitrate*[,]" shall be determined by the arbitrator.[52]  An arbitration provision requiring the parties to

---

[50] *Id.* at 2 (emphasis added).
[51] Not only is Plaintiffs' argument contrary to the plain reading of the Fee Agreement, but it is also directly contrary to their allegations in this action and the New York Litigation.  In their Complaint, Plaintiffs allege: "Defendant Grossman, through his affiliated entity … entered into a Fee Agreement … whereby Grossman … would work as a consultant on behalf of CSP." Compl. ¶6. In the New York Litigation, Mr. Blatt, via affidavit, alleges Mr. Grossman violated the Fee Agreement.  *See* Defs' Reply Br., Exhibit A at 3.
[52] *Id.* ¶ 4 (emphasis added).

arbitrate "the validity, scope and enforceability of these arbitration provisions" clearly and unmistakably assigns to the arbitrator the task of determining substantive arbitrability.[53] Thus, the parties clearly and unmistakably intended to submit the issues of substantive arbitrability to the arbitrator. Therefore, the arbitrator must decide whether Count II, the trade secrets claim, is subject to arbitration.[54] Defendants' motion to stay the misappropriation of trade secrets claim pending a determination of arbitrability by the arbitrator is granted.

### C. PLAINTIFFS' DECLARATORY JUDGMENT ACTION IS NOT SUBJECT TO ARBITRATION

Count I seeks a declaratory judgment that Capstack owes no obligations to Mr. Grossman or JMG Capital. Neither party contends that Capstack is a signatory to the Fee Agreement. Defendants, however, contend that the fact that Capstack is not a party to the Fee Agreement "need not prevent this Court from finding that there is a colorable argument that Count I is a dispute 'arising out of or relating to' the Fee

---

[53] *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1119 (Del. Ch. 2010) ("[b]y stating that the members 'shall' arbitrate 'any dispute ... including the validity, scope and enforceability of these arbitration provisions,' the Arbitration Provision clearly and unmistakably assigns to the arbitrator the task of determining substantive arbitrability.").

[54] Defendants cite to various cases that interpret *McLaughlin v. McCann* to add a third prong to the *Willie Gary* test: that the Court will not refer a frivolous issue of arbitrability to an arbitrator. *See West IP Commc'ns, Inc. v. Xactly Corp.*, 2014 WL 3032270, at \*9 (Del Super. Ct. June 25, 2014) and *Legend Nat'l Gas II Holdings, LP v. Hargis*, 2012 WL 4481303, at \*6 (Del. Ch. Sept. 28, 2012). However, given the United States Supreme Court's holding in *Henry Schein, Inc. v. Archer & White Sales, Inc*. and the Delaware Supreme Court's adherence to the majority federal rule in *Willie Gary*, the third prong is inconsistent with precedent. *See also, Fairstead Cap. Mgmt. LLC v. Blodgett*, 2023 WL 115540, at \*22 ("Even if the court were to view arguments for arbitrability as wholly frivolous, they would still be for the arbitrator to decide.").

13

Agreement."[55]  In support of their contention, Defendants argue that the relationship between CSP and Mr. Grossman led to the relationship between Mr. Grossman and Capstack, and that Capstack and CSP are inextricably intertwined.[56]  Thus, Defendants contend "there is a colorable argument that Count I is a dispute 'arising out of or relating to' the Fee Agreement sufficient for this Court to dismiss it."[57]

Defendants' argument, however, presupposes that Capstack is bound by the arbitration provision in the Fee Agreement without considering the threshold issue of contract formation.  As previously explained, the first step in an arbitrability determination is deciding whether a valid arbitration agreement exists between the parties.[58]  The issue of whether Capstack has contracted to arbitrate its claims against Mr. Grossman and JMG Capital or is otherwise bound to the terms of the Fee Agreement is an issue of contract formation and decided by the Court.[59]

A non-signatory to a contract can be bound by an arbitration clause within that contract when "'traditional principles of contract and agency law' equitably confer

---

[55] Defs.' Opening Br. at 15-16.
[56] *Id.* at 16.
[57] *Id.*
[58] *See supra* V.A.
[59] *See Fairstead Cap. Mgmt LLC v. Blodgett*, 2023 WL 115540, at *19-20 (Jan 6, 2023) (The issue of whether a non-signatory can be bound to an arbitration agreement is an issue for the court and is distinct from the issue of substantive arbitrability).

14

upon that party signatory status with regard to the underlying agreement."[60] Courts have "recognized five theories for binding non-signatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel."[61] None of these theories apply here.

Defendants appear to advance the theory that Capstack is an alter ego of CSP.[62] Defendants rely on *Legend Natural Gas II Holdings, LP v. Hargis*, in which non-signatory successor-in-interest entities were determined to be bound to an arbitration agreement signed by their predecessor entities. [63] The *Legend Natural Gas* Court noted that in Delaware, "a successor corporation which is merely the 'alter ego' of the predecessor is bound by the arbitration clause of an agreement made by the predecessor."[64]

In the instant case, however, Capstack is an affiliate of CSP, not its successor-in-interest. In general, Delaware courts typically do not disregard the separateness of corporate entities.[65] "To succeed, the challenging party must prove that the corporate structure 'must be a sham and exist for no other purpose than as a vehicle

[60] *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 430 (Del. Ch. 2007) (*citing E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir.2001)).

[61] *Buzzfeed, Inc. v. Anderson*, 2022 WL 15627216, at *8 (Del. Ch. Oct. 28, 2022).

[62] Defs.' Opening Br. at 16 ("CSP and Capstack are owned and managed by the same person, David Blatt, and are inextricably intertwined").

[63] *Legend Natural Gas II Holdings, LP v. Hargis*, 2012 WL 4481303, at *6 (Sept. 28, 2012).

[64] *Id.*

[65] *Buzzfeed, Inc. v. Anderson*, 2022 WL 15627216, at *12 (Del. Ch. Oct. 28, 2022).

for fraud.'"[66]  Defendants do not allege the affiliate relationship between CSP and Capstack was merely a vehicle for fraud, and the Court does not find any indication from the pleadings that such was the case.

The Court finds that Capstack has not agreed to submit any claims it has against Mr. Grossman or JMG Capital to arbitration and principles of equity do not support binding Capstack to the terms of the Fee Agreement.  Accordingly, Defendants' Motion to dismiss or stay Count I, declaratory judgment action, pending a determination of arbitrability by the arbitrator is denied.[67]

### D. DEFENDANTS' MOTION TO DISMISS THE DECLARATORY JUDGMENT ACTION ON THE GROUNDS OF FORUM NON CONVENIENS IS DENIED

#### 1. The *Burris v. Cross* Factors Do Not Weigh In Favor of Dismissal

Defendants argue that if the Court finds Plaintiffs' declaratory judgment action is not subject to arbitration, then the Court should find the action is 'overripe' under *Burris v. Cross* and dismiss the action.[68]  *Burris v. Cross* identified seven factors which inform the appropriateness of a declaratory judgment action seeking declarations on the merits of claims pending in another court.  These factors are:

---

[66] *Id.* (*citing Wallace ex rel. Cencom Cable Income P'rs II, Inc. v. Wood,* 752 A.2d 1175, 1183 (Del. Ch. 1999)).

[67] Because the NY Litigation does not relate to Count II and the Court has determined that the declaratory judgment action is not subject to arbitration, it need not address Plaintiffs' argument that Defendants waived their right to arbitrate by initiating the New York Litigation.

[68] Defs.' Opening Br. at 19.

(1) Whether the defendant is truly an unwilling litigant, thus necessitating declaratory action. (2) What form of relief is truly being sought by the plaintiff and whether that relief, if not solely a declaration of rights, would require resort to another court for supplemental relief. If so, whether both the rights and relief could be attained in a single non-declaratory action already available. (3) Whether another remedy exists and whether it would be more effective or efficient and, thus, whether declaratory judgment would serve a useful purpose. (4) Whether another action is pending, instituted either before or after the instant action, at the time of consideration of the Motion to Dismiss, and whether plaintiff would be able to raise all claims and defenses available in the instant action, as part of the pending action. (5) Whether the instant action has truly been instituted to seek a declaration of rights or merely for tactical or other procedural advantage. (6) Whether the instant action was filed in apparent anticipation of other pending proceedings. (7) Whether plaintiff will suffer any prejudice if the instant action is dismissed.[69]

Several facts, however, distinguish the instant case from *Burris* and make dismissal of Plaintiffs' declaratory judgment action inappropriate under the *Burris* factors. First, the Court disagrees with Defendants' assertion that Plaintiffs knew Defendants intended to initiate litigation in New York in the event their settlement demand was not met.[70] While it is true the Demand Letter was drafted by counsel in New York and stated Defendants were prepared to "pursue claims, if necessary," the Demand Letter did not indicate the forum Defendants intended to litigate in. Further, Defendants' assertion that Plaintiffs should have known Defendants

---

[69] *Id.* at 1372-73.
[70] Defs.' Opening Br. at 21.

17

intended to litigate in New York is undercut by the fact that Defendants are now claiming that the declaratory judgment action is subject to arbitration. Thus, unlike in *Burris*, Defendants did not clearly express their intent to file in a particular jurisdiction if Plaintiffs did not meet the terms of the Demand Letter.

Second, despite Defendants' assertions that their Demand Letter demonstrated a clear intent to litigate, their complaint in the New York Litigation was not filed until February 7, 2023, more than six months after initiation of the suit.[71] While the rules of civil procedure in New York may allow this length of delay between initiation of a suit and the filing of a complaint, it hardly presents the picture of a willing litigant who, like the defendant in *Burris*, was ready to file in the event negotiations were unsuccessful and was preempted from his choice of forum at the eleventh hour.

Third, the relief requested by Plaintiffs here is truly a declaration of rights. In contrast, in *Burris*, the plaintiff's claims for declaratory relief were claims for injunctive relief more properly brought in the Court of Chancery.[72] Here, Plaintiffs' request for declaratory relief asks this Court to interpret the terms of contract, if any,

---

[71] *See* Compl., *Matthew Grossman and JMG Cap. Properties, LLC v. David Blatt et al*, No.: 652619/2022 (N.Y. Sup. Ct. filed February 7, 2023).
[72] *Burris*, 583 A.2d at 1373.

18

between Mr. Grossman and Capstack. This type of issue "strike[s] at the very heart of declaratory judgment relief, contract interpretation."[73]

Fourth, finally, and fundamentally, the fact pattern in this case mirrors a typical declaratory judgment scenario, wherein, "an unwilling litigant will have cast a cloud upon a property right (or other legal interest) but will not have moved forward to litigate the claim."[74] By asserting Capstack was in breach of contract, Defendants effectively "cast a cloud" upon Capstack's obligations to Mr. Grossman and gave rise to reasonable grounds for insecurity. Under these circumstances, it was appropriate for Capstack to seek declaratory relief. The *Burris* factors do not weigh in favor of dismissal.

### 2. The Cyro-Maid Factors Do Not Weigh in Favor of Dismissal

Defendants argue that in the event the Court does not dismiss the declaratory judgment action under *Burris*, the Court should nonetheless dismiss the action on the grounds of *forum non conveniens*.[75] "Where the actions are considered contemporaneously filed, 'the movant must demonstrate that litigating in Delaware

---

[73] *E.I. DuPont De Nemours & Co., Inc. v. Huttig Bldg. Prods., Inc.*, 2002 WL 32072447, at *3 (Del. Super. Ct. May 28, 2002).
[74] *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987).
[75] Defs.' Opening Br. at 22.

would cause overwhelming hardship,' to justify a dismissal."[76]  "To justify a stay where the actions are contemporaneously filed, 'the movant need only demonstrate that the preponderance of applicable forum factors 'tips in favor' of litigating the dispute in the non-Delaware forum.'"[77]

When a motion to dismiss or stay based on *forum non conveniens* is filed, the Court considers the following five factors: "(1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of a view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; and (5) all other practical problems that would make the trial of the case easy, expeditious and inexpensive."[78]

The Court does not need to conduct a fulsome analysis under these factors to conclude that Defendants do not meet their burden to dismiss or stay this action in favor of the New York Litigation.  The first two factors do not counsel for dismissal or staying of this action.  "Delaware courts have found that to demonstrate overwhelming hardship, a party must identify the witnesses not subject to

---

[76] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Construction Co.*, 2014 WL 703808, at *2 (Del. Super. Feb. 17, 2015) (*citing BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2 (Del. Super. Ct. Feb. 25, 2010)).

[77] *Id.* (*citing BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2 (Del. Super. Ct. Feb. 17, 2014).

[78] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1193-94 (Del. Super. Ct. 2020) (*General Foods Corp. v. Cryo–Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964)).

20

compulsory process and the specific substance of their testimony."[79]  Aside from

Mr. Grossman, Defendants do not identify any witnesses located in New York.  The

third factor, the possibility of a view of the premises, is irrelevant on the facts of this

case.  The Court does not have enough information on the purported oral agreement

to decide the fourth factor.  Finally, Defendants' argument under the fifth factor

simply points the Court back to the arguments made in support of the earlier

factors.[80]  For the same reasons, that those factors are unpersuasive, this factor is

similarly unpersuasive.

## VI.    CONCLUSION

Defendants' motion to dismiss or stay the declaratory judgment claim is

**DENIED**. Plaintiffs' misappropriation of trade secrets claim is **STAYED** pending a

determination of arbitrability by the arbitrator.  Plaintiffs shall elect whether to

submit the misappropriation of trade secrets claim to an arbitrator, per the Fee

Agreement, within thirty (30) days of this ruling.  If Plaintiffs initiate arbitration for

this purpose, the stay will continue pending the arbitrator's decision.  If Plaintiffs

elect not to initiate arbitration within thirty (30) days, Defendants shall so notify the

---

[79] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turner Construction Co.*, 2014 WL 703808, at *5 (Del. Super. Feb. 17, 2015) (citation omitted).
[80] Defs.' Opening Br. at 24.

Court and submit a proposed form of order dismissing this claim with prejudice for want of subject matter jurisdiction.  **IT IS SO ORDERED.**

> _/s/Patricia A. Winston_
> **Judge Patricia A. Winston**